15125

BENNETT v. BENNETT

(10 S. E. (2d), 23)

December, 1939.

*Messrs. J. Alex Neely, Jr., W. J. McLeod, Jr.,* and *H. Wayne Unger,* for appellant,

*Messrs. M. P. Howell* and *Padgett & Moorer,* for respondent,

July 22, 1940.

The opinion of the Court was delivered by MR. CHIEF JUSTICE BONHAM.

The plaintiff-appellant in this case is the legitimate daughter of F. Capers Bennett by his first wife. She was not included in the provisions of his will, and she brings this action. She contested the execution of the will; it has been proved in common and solemn form; an appeal from the ruling of the Probate Court is under preparation, but is not before this Court.

The complaint seeks to set aside the provisions of the will upon the ground that the marriage between Franklin Capers Bennett and Louetta Chassereau was void because she was the niece of Bennett, the daughter of his brother; that the marriage was void because she had more than an eighth of Negro blood in her veins; and that Louetta Chassereau and F. C. Bennett lived together in adultery and, hence, he could not devise to her more than one-fourth of his property.

The cause was referred to the Master to hear and determine the issues of law and of fact. Much testimony was taken and the Master filed an able and full report, in which he analyzes the evidence and discusses the law and recommends that the complaint be dismissed.

Judge J. Henry Johnson heard the appeal from this report, upon exceptions, and made an order confirming the

recommendation of the Master. that the complaint be dismissed. The appeal comes to us upon numerous exceptions. We think the answer to the following questions will determine the whole case:

I. Was the marriage between Franklin Capers Bennett and Louetta Chassereau void because of the fact that she is his niece, the daughter of his brother?

II. Did Franklin C. Bennett and Louetta Chassereau live together in adultery and thus render null and void any devise to her by him of more than one-fourth of his estate?

III. Did Louetta Chassereau have more than one-eighth of Negro blood in her veins and thus make void Franklin Capers Bennett's marriage to her?

These are the fundamental issues in the case.

It is undisputed that Louetta Chassereau is the niece of Franklin Capers Bennett, being the daughter of his half-brother. Does that render their marriage void or only voidable?

The Master held that the marriage was voidable during the life time of the parties and, Bennett being dead, it could not now be voided. He quotes from 18 R. C. L., page 444, paragraph 74: "It is almost universally stated that unless expressly interdicted by statute a consanguineous marriage which is within the Levitical degrees, or, as it is sometimes stated, God's law or the law of God, is not absolutely void, but rather is voidable only during the lives of the parties: and that if not so avoided during their lives it must be deemed valid to all intents and for all civil purposes. * * *"

In the case of *State v. Sellers,* 140 S. C., 66, 134 S. E., 873, 874, this Court said: "Agreeable to the view that it is only necessary to establish a 'voidable marriage' to support an indictment for bigamy is the case of *State v. Smith,* 101 S. C., 293, 85 S. E., 958, Ann. Cas., 1917-C, 149. In that case, the defendant had first married his niece of the half blood; without any annulment of that marriage, and while the first wife was still alive, he married again. This court

held that at the time of the marriage to the niece such marriage was not void under the law of this state, but only voidable, and, since there had been no proceedings to have the same declared invalid, the second marriage was bigamous. In the opinion therein, Mr. Justice Hydrick quoted with approval the distinction between void and voidable marriage, as laid down by Mr. Bishop, * * *."

In the case of *State v. Smith,* cited in the *Sellers case, supra,* it appears that Smith had married the daughter of his half-sister; they separated, but nothing was done to annul the marriage; he married again and was indicted for bigamy. He pleaded in defense that the marriage with his niece was incestuous and void. The Court held that it was voidable, not void.

"* * * At common law, as well as under statutes defining the prohibited degrees, relationship by blood includes person of the half, as well as of the whole, blood, and illegitimate, as well as legitimate, offspring."

* * *

"At common law and in the absence of express statutory prohibition, uncle and niece may contract a valid marriage, voidable only at the institution of proceedings by a party thereto; * * *." 38 C. J., page 1292, Sections 30 and 32.

"Who May Contract Matrimony.—All persons, except idiots and lunatics, not prohibited by this section, may lawfully contract matrimony. No man shall marry his mother, grandmother, daughter, granddaughter, stepmother, sister, grandfather's wife, son's wife, grandson's wife, wife's mother, wife's grandmother, wife's daughter, wife's granddaughter, brother's daughter, sister's daughter, father's sister or mother's sister.

"No woman shall marry her father, grandfather, son, grandson, stepfather, brother, grandmother's husband, daughter's husband, granddaughter's husband, husband's father, husband's grandfather, husband's son, husband's

grandson, brother's son, sister's son, father's brother or mother's brother." Section 8556, Code 1932.

We think that the exceptions which challenge the finding and conclusion that the marriage of Franklin C. Bennett and Louetta Chassereau was not void, but voidable at the instance of either party thereto, and not having been rendered void during the life time of Franklin C. Bennett, by proper proceedings, cannot now be disturbed, he being dead, are without merit.

The second question makes the issue that Franklin C. Bennett and Louetta Chassereau lived together in adultery and, therefore, the devise to her of his entire estate is invalid and against the provisions of Sections 8695 and 8927 of the Code of 1932. These sections are almost identical in language and both provide that if a person live in adultery with another, leaving a wife or lawful child or children, he shall not devise or give or convey to the woman with whom he lives in adultery or to his bastard children more than one-fourth of his estate. It is admitted that Franklin C. Bennett was a widower when he married Louetta Chassereau, and that the plaintiff Virginia Bennett is his lawful child. The vital issue then is this: Did Franklin C. Bennett and Louetta Chassereau live in adultery?

The Master answers that question, no; and the Circuit Judge confirms that finding. The proof is ample that this marriage was lawful, unless the marriage was forbidden by the statute laws of this State because Louetta Chassereau had one-eighth or more of Negro blood in her veins; and that brings us to the consideration of the third question we have set for determination.

There is a great deal of testimony on this subject. The Master has given an epitome of it in his report which we here copy; the Master finds, and the Circuit Judge affirms the finding: " * * * I find as a fact that while it has been proved that the defendant has some negro blood in her veins the plaintiff has failed to prove that the defendant has one-

eighth or more negro blood in her veins. Upon the death of the defendant's father and mother she was first taken into the home of white people; then she was placed in a church orphanage for white children; she was confirmed by Bishop Capers as a communicant of the Holy Communion Church of Charleston, a white church; she was taken from the orphanage and placed in a white home as a member of the family, and from there into another white home as a member of that family; she married a white man, the marriage being solemnized by the Pastor of Spring Street Methodist Church, South, in Charleston, a white church; she votes in the democratic primaries, both City and State, whose rules bar negroes from voting; her children attend the white public schools of Walterboro, of which one of the plaintiff's attorneys is a trustee; two of her children attend the white Methodist Sunday School at Walterboro of which one of the plaintiff's attorneys is a Steward and Superintendent; two of her children attend the white Episcopal Sunday School of Walterboro; the Godfather and Godmother of two of her children are Mr. and Mrs. I. M. Fishburne of Walterboro, he being the president of the Farmers & Merchants Bank; she is generally accepted in Walterboro as a white person."

This is ample evidence to sustain the finding that the plaintiff has failed to prove that the defendant has one-eighth or more of Negro blood in her veins.

"Marriages of Whites and Negroes—Sexual Intercourse. —The marriage of a white person with a negro or mulatto, or person who shall have one-eighth or more negro blood shall be unlawful and void. No unmarried woman shall legally consent to sexual intercourse who shall not have attained the age of fourteen years." Article 3, Section 33, Constitution 1895.

All exceptions are overruled and the judgment is affirmed.

Messrs. Justices Baker, Fishburne, and Stukes and Mr. Acting Associate Justice L. D. Lide concur.