9105

STATE v. SMITH.

(85 S. E. 958.)

MARRIAGE. PROHIBITED DEGREES. VALIDITY. BIGAMY.

1. MARRIAGE—PROHIBITED DEGREES.—The marriage of a man with his niece of the half blood, contracted in 1882, was voidable only, and not void, and until avoided by decree of a Court of competent jurisdiction, was valid and binding, and rendered a subsequent marriage bigamous.

2. MARRIAGE—PROHIBITED DEGREES.—Civil Code 1912, sec. 3743, prohibiting the marriage of uncle and niece, includes relatives of the half blood within these degrees.

3. MARRIAGE—AVOIDING CONTRACTS OF.—The power conferred by Civil Code 1912, sec. 3753, upon the Court of Common Pleas to hear and determine any issue affecting the validity of a marriage contract and declare the same void, is limited to cases where the marriage contract has not been consummated by cohabitation of the parties.

4. MARRIAGE—INCEST—EX POST FACTO LAW.—The provisions of Civil Code 3743, and Crim. Code, sec. 388, declaring marriages within the prohibited degrees of relationship incestuous, cannot affect the status of parties cohabiting under a marriage contracted prior to the enactment of such statutes.

5. MARRIAGE—PROHIBITED DEGREES.—Civil Code, sec. 3743, prohibiting marriage within specified degrees of relationship, renders such marriages voidable only, and not void.

6. BIGAMY.—Where defendant married the daughter of his half-sister and no proceeding to have it declared invalid was ever commenced, his marriage to another woman after separation from his first wife was bigamous.

Before SEASE, J., Gaffney, June, 1914. Affirmed.

H. L. Smith being convicted on an indictment for bigamy and sentenced, appeals. The facts are stated in the opinion.

*Messrs. J. B. Bell* and *Butler & Hall,* for appellant, cite: Civil Code, sec. 3743; 19 Ency. Law 1175; 16 Ency. Law 137; 44 Kan. 190; 51 La. Ann. 190; 5 Mich. 305; 3 Mont. 50; 95 Tenn. 152; 31 Tex. Crim. App. 186. *Status before enactment of statute:* 2 Rich. 208; 10 Rich. Eq. 551; Crim. Code, sec. 381. *Marriage a mere contract:* 69 S. C. 400;

FOOTNOTE.—See notes in 1 A. & E. Ann. Cas. 613, on marriages within prohibited degrees of relationship as voidable or void, and on this case in 81 Central Law Journal 189.

*and in violation of law are void:* 20 S. C. 430; 14 Ann. Cas. 74; 26 Cyc. 900, 907; 52 Iowa 41; 15 La. Ann. 519; 52 N. J. Eq. 195; 105 N. Y. App. Div. 312; 13 U. S. L. Ed. 1071; 90 S. C. 233; 26 Cyc. 900.

*Mr. Solicitor Hill,* for respondent.

May 14, 1915.

The opinion of the Court was delivered by MR. JUSTICE HYDRICK.

Defendant appeals from sentence on conviction of bigamy. In 1882, he married Leonora Harris, the daughter of his half sister. They cohabited as man and wife for thirty years, or more, and raised a family of seven children. Some three or four years ago they separated. In 1913, after the separation, defendant married another woman, M. E. B. Harris, and cohabited with her as his wife up to the time of the trial, at which time both women were alive.

The sole defense is that the first marriage, being within the degrees prohibited by statute, was incestuous and void, and, therefore, the second was not bigamous.

Questions affecting marriage and its consequences are of grave importance to the citizens and the State, and they deserve the most careful consideration.

In *State* v. *Barefoot,* 31 S. C. L. (2 Rich.) 209, decided in 1845, it was held that a nephew might lawfully marry his aunt; and, having married again, while she was alive, he was guilty of bigamy. In that case the Court pointed out the difference between *executory* and *executed* contracts of marriage, and, also, the difference between marriages which are *void* and those which are only *voidable*—differences of the utmost importance in the determination of the *status* and rights of the immediate parties thereto, and the consequences, as they affect the innocent offspring of such unions and society, or the State. It was there shown that, at common law, the marriage in question was not *void,* but merely *voidable,* and, until avoided by decree of a Court of competent jurisdiction, it was

valid and binding, and the subsequent marriage was bigamous. It was also held, upon clear and cogent reasoning, that, although the immediate parties to such an incestuous union may deserve punishment, their offspring have rights that should not be ignored.

In *Bowers* v. *Bowers,* 33 S. C. Eq. (12 Rich. Eq.) 551, decided in 1858, it was held that a marriage between uncle and niece was so far valid as to protect the claim of the wife, after the death of her husband, to her distributive share in his estate. The avowed object of that appeal was to obtain the review and reversal of the decision in *Barefoot's* case. But it was reaffirmed, and the Court again pointed out the difference between *void* and *voidable* marriages, and showed that the latter must be avoided, if at all, during the life of the parties. The decision in those cases is fully sustained by the authorities therein cited, and is in accord with the great text-writers and the consensus of judicial opinion in England and in this country.

But it is contended that at the date of those decisions there was no statute in this State prohibiting such marriages, and no Court with power to annul them—a fact which was adverted to in the opinions of the Court—and that, since that time the legislature has, by statute, not only prohibited such marriage, but has made the parties thereto guilty of the crime of incest, which was not a crime at common law.

The question must, therefore, be considered as it may be affected by subsequent legislation. The first legislation on the subject appears in the Revised Statutes of 1873, and this has been brought forward in subsequent revisions, and appears in section 3743 of the Civil Code of 1912, which, so far as pertinent, reads: "All persons, except idiots and lunatics, not prohibited by this section, may lawfully contract matrimony. No man shall marry his * * * sister's daughter * * *

No woman shall marry her * * * mother's brother."

In passing, it may be remarked that the fact that the relationship in this case is only of the half blood, and, therefore, not strictly within the prohibition of the statute, is of no consequence; for, upon reason and authority, the words used in the statute must be taken in their ordinary meaning, and, therefore. include relations of the half blood, and, also illegitimates who are within the prohibited degrees. 16 A. & E. Enc. L. (2d) 137, and cases cited in notes; 19 *Id.* 1175; 1 Bish. Mar. & Div., secs. 745, 748.

By section 1 of "An act to regulate the granting of divorces," passed in 1872 (16 Stat. 30), either party to a marriage, the validity of which was doubted or denied, was authorized to institute a suit to determine the validity thereof; and while that act was repealed in 1878 (16 Stat. 719), the provision above referred to has been brought forward in subsequent revisions and now appears as sec. 3752, Civ. Code 1912.

In 1882 (17 Stat. 681), an act was passed, which is now sec. 2753, Civ. Code 1912, and reads: "The Court of Common Pleas shall have authority to hear and determine any issue affecting the validity of contracts of marriage, and to declare said contracts void for want of consent of either of the contracting parties, or for any other cause going to show that, at the time of the said supposed contract was made, it was not a contract: *Provided,* That such contract has not been consummated by the cohabitation of the parties thereto."

In 1884 (19 Stat. 801) incest was made a crime, and carnal intercourse between persons within the degrees of relationship within which marriage was prohibited by section 3743, *supra,* was made incest. Crim. Code, sec. 388.

It appears, therefore, that, at the time of the marriage between defendant and Leonora Harris, in 1882, incest was not a crime. It follows that, if that marriage was only *voidable,* and not absolutely *void,* his cohabitation with her

after the passage of the act of 1884, making it a crime, cannot be punished as incest; for, as to the parties to that marriage, the statute would be *ex post facto.*

The question, then, is, whether the prohibition of the statute renders the marriage void *ab initio,* for we have seen that, but for that prohibition, it would be only voidable, and the subsequent marriage bigamous.

In determining this question, it is important to keep in mind the difference, already adverted to, between *executory* and *executed* contracts of marriage, and, also, the difference between *void* and *voidable,* as applied to such contracts. No doubt the legislature had in mind these differences when it added the proviso to section 3753, *supra,* which limits the Court in declaring marriages void, when they have been consummated by cohabitation of the parties.

In 1 Bish. Mar. & Div., section 253, *et seq.,* the difference between void and voidable is pointed out, as applied by text-writers and Judges to marriage contracts, and it is there shown that there is a peculiar sort of voidable with reference to marriage contracts which does not pertain to others. In sections 258 and 259, the author thus defines void and voidable marriages:

Sec. 958. "A marriage is termed void when it is good for no legal purpose, and its invalidity may be maintained in any proceeding, in any Court, between any parties, whether in the lifetime or after the death of the supposed husband and wife, and whether the question arises directly or collaterally.

Sec. 959. A marriage is voidable when in its constitution there is an imperfection which can be inquired into only, during the lives of both of the parties, in a proceeding to obtain a sentence declaring it null. Until set aside, it is practically valid; when set aside, it is rendered void from the beginning."

In discussing the effect of statutes prohibiting certain marriages, the same author (sec. 289) says: "If it does not

appear in the affirmative words of a statute whether the marriage it forbids is void or voidable, we seek the legislative intent in the prior law. And we follow the rule that all laws, written and unwritten, at whatever dates established, are to be interpreted into one harmonious system of jurisprudence. The written law of void or voidable within the prohibited degrees is, in our States generally, what the English unwritten law, modified by the written, was before the enactment of 5 & 6 Will. 4, c. 54. And we have seen that through the workings of a statute of Henry VIII the marriage became voidable. Therefore, as every enactment is to be interpreted in harmony with the written law, and as superseding it only to the extent required by its express terms or necessary operation, it results that, unless the one defining the forbidden degrees declares the marriage it prohibits void, it is but voidable."

In 26 Cyc. 846, it is said: "At common law the canonical impediments of consanguinity and affinity rendered a marriage voidable merely, and the same is true where such marriages subject to such impediments are merely prohibited by the statute; and in some jurisdictions statutes declaring such marriages void, have been construed as meaning voidable only."

Sedgwick, at page 89 of his work on Statutory and Constitutional Law, says: "It does not, however, follow that when an act is forbidden by statute, everything done in contravention of the act is to be considered void. This would lead to the results of too serious a character. So, in regard to marriage, where a statute imposes a penalty on an officer for solemnizing the union, but does not in words declare the marriage void * * * the marriage is valid, and the penalty only attaches to the officer who performs the act expressly prohibited."

These authorities show that, notwithstanding the prohibition of section 3743 which does not, in express terms, declare marriages therein prohibited to be void, the marriage

of the defendant to Leonora Harris in 1882 was not void, but only voidable. It follows that his marriage, in 1913, was bigamous.

Judgment affirmed.