STATE OF IOWA, Appellee, v. E. E. LAMB, Appellant.

No. 39868.

NOVEMBER 21, 1929.

*W. Allen Whitfield,* for appellant.

*John Fletcher,* Attorney-general, and *Alexander M. Miller,* Assistant County Attorney, for appellee.

DE GRAFF, J.—This is a case of novel impression in this court. There is but one question to be answered. Is the term "half sister" included in the term "sister," as found in the statute defining void marriages? Section 10445, Code of 1927. Stating the question presented in another form: Does the indictment charge a crime (incest), as defined in Section 12978, Code of 1927?

This court recognizes the rule that a conviction for crime will not be affirmed where no crime is charged in the indictment, irrespective of the diligence of the appellant in pointing out the defect to the trial court. *State v. Daniels,* 90 Iowa 491. We are not dealing with a code of ethics, but with legislative enactment and legal definition. In defining crime, the sovereign state does not attempt to effectuate justice in an ethical sense, although its power to do so is unlimited. This is true even as to tort. *Ex Parte United States, Owner of the "Western Maid,"* 257 U. S. 419, l. c. 433. Common-law crimes are not recognized in Iowa. Sometimes we resort to the common law for definition, but no act is a crime in this state unless made punishable by law. *State v. Banoch,* 193 Iowa 851. The crime of incest was not known to the common law.

We first turn to the statutes of Iowa which have reference to the matter involved in the case at bar. Section 12978 provides:

"If any persons, being within the degrees of consanguinity or affinity in which marriages are declared by law to be void, carnally know each other, they shall be guilty of incest, and imprisoned in the penitentiary not exceeding twenty-five years."

What degrees of consanguinity or affinity are included? See *State v. Andrews*, 167 Iowa 273. This question must be answered by Section 10445, under the caption "Void Marriages." This section, after all defined sexual relations not pertinent to the instant case have been eliminated, reads:

"Marriages between the following persons shall be void: 1. Between a man and his * * * brother's daughter or *sister's* daughter." (Italics by the writer.)

It is well at this point to visualize the background of the law of incest. It found its origin in the Mosaic Law, and it is sufficient to read Verse 11, Chapter 18, of Leviticus: "The nakedness of thy father's wife's daughter, begotten of thy father, she *is* thy sister, thou shalt not uncover her nakedness." This is one of the several provisions defining and forbidding incest, and constitutes one of the injunctions under the Mosaic Law, for it is commanded in Deuteronomy, Chapter 8, Verse 2, "And thou shalt remember all the way which the Lord thy God led thee;" and the test of that remembrance is "whether thou wouldest keep his commandments, or no." As instances of the violation of these Mosaic Laws, we need but cite the names of Lot, Abimelech, Nahor, Reuben, Amram, Judah, and Amnon.

These commandments of the Mosaic Law found their way to the Christian church at Rome, and were later adopted by the ecclesiastical courts of England and became a part of the ecclesiastical law. Subsequently, statutes were enacted by Parliament which were based on the ecclesiastical table of degrees established by Archbishop Parker in 1563. For further study and investigation, see Annotation L. R. A. 1916C 690.

The statutes governing this subject as enacted by the legislature of the states of this Union, although not altogether uniform, are to a large extent copied from the English statutes. It

may further be stated that the text-writers on this subject quite uniformly assert that the incestuous prohibition applies to near relatives, whether by the half blood or the whole blood, and whether legitimate or illegitimate. See Keezer on Marriage and Divorce (1923), Section 110; 1 Schouler on Marriage, Divorce, Separation and Domestic Relations (1921) 22, Section 16; 2 Nelson on Divorce and Separation (1895), Section 710; 1 Bishop on Marriage, Divorce and Separation (1891), Section 748. All of these eminent writers recognize and state that the relation by half blood is in the same category as the relation by whole blood, and Bishop, supra, adds:

"* * * so that, for example, it is incestuous for a man to marry the daughter of his brother of half blood, or the daughter of his half sister."

In an early English case, *Butler v. Gastrill*, Gilbert's Reports 156 (25 Eng. Reprint 110), decided in 1721, it is said:

"And when we consider who are prohibited to marry by the *Levitical* Law, we must not only consider the mere words of the law itself, but what, from a just and fair interpretation, may be deduced from it * * *."

See, also, *Regina v. Inhabitants of Brighton* (Eng. 1861), 1 B. & S. 447 (121 Eng. Reprint 782).

In the matter of construing a criminal statute, we may quote the language of one of the latest cases decided by the Supreme Court of the United States (April 22, 1929), wherein it is said:

"We agree to all the generalities about not supplying criminal laws with what they omit, but there is no canon against using common sense in construing laws as saying what they obviously mean." *Roschen v. Ward,* 279 U. S. 337 (73 L. Ed. 722).

We now ask what has been the attitude and the interpretation given by our sister states on statutes similar to the enactment on the subject in Iowa. Probably the leading case, which had its finality in the Supreme Court of Vermont in 1887, is *State v. Wyman,* 59 Vt. 527 (8 Atl. 900, 59 Am. Rep. 753). Under the Vermont statute (Revised Laws of Vermont 1880, Section 2306), the prohibition reads: "No man shall marry * * *

his brother's daughter. * * *" In the *Wyman* case, supra, it was contended that the word "brother" in the statute was not broad enough to cover the brother of half blood, since the case involved the daughter of a half brother. The common law governing the law of descent was urged, in that a brother of the half blood could not inherit; but it was held that the common-law rule relied upon by appellant had no force in a case of this kind. As to the meaning to be given the word "brother," it is said:

"* * * but the generally understood significance of the word 'brother,' as used in the common affairs of life, and as defined by the lexicographers of recognized authority, should be adopted in the construction of the statute."

The case at bar involves the word "sister," and the definition given in Webster's New International Dictionary reads:

"A female * * * considered in her relation to another person * * * having the same parents (whole sister), or one parent in common (half sister)."

In *Commonwealth v. Ashey* (1924), 248 Mass. 259 (142 N. E. 788), a half-sister's daughter was involved in an indictment charging incest. The statutory prohibition (General Laws of Massachusetts 1921, Chapter 207, Section 1) provides: "No man shall marry his * * * sister's daughter." It appears that this also was a case of first impression in the Supreme Court of Massachusetts. After citing certain decisions hereinafter mentioned, the court said: "In view of this uniform line of authorities we are of opinion that the defendants come within the prohibition * * *." The Massachusetts court also followed the Vermont decision, quoted supra herein, in holding that the ancient system of feudal tenures and rules of descent had no relation to the statute defining and punishing incest.

In *Shelly v. State* (1895), 95 Tenn. 152 (31 S. W. 492, 49 Am. St. 926), the facts involve an alleged incestuous intercourse by the appellant with the daughter of his half sister. The primary contention, as indicated by the terse opinion filed in that case, was to the effect that the term "sister," as used in this connection, did not include a half sister. It was held: "* * * the

offense would be the same as if she had been the daughter of a full sister.''

The oldest American decision of this character that has been called to our attention is *People v. Jenness* (1858), 5 Mich. 305. It was charged that the defendant committed fornication with a certain named female, Delia E. Ashcroft, who was the daughter of the defendant's sister. The question, however, arose whether or not the mother of Delia was a half sister or a sister of the whole blood. The Michigan statute then in force (2 Compiled Laws of Michigan 1857, Section 3206, Paragraph 3) provided: ''No man shall marry his * * * sister's daughter. * * *'' In the opinion it is said:

''The charge is sexual intercourse between persons within the degrees of consanguinity within which marriages are prohibited. By reference to the statute prescribing these degrees * * * it will be seen that no man is permitted to marry his sister's daughter, * * * and we think it quite clear that such marriages are equally prohibited, whether the parties or their parents are * * * of the whole or the half blood.''

In the case of *Simon v. State* (1892), 31 Tex. Cr. 186 (20 S. W. 399, 37 Am. St. 802), the defendant was convicted of the crime of incest, on the accusation that he had intercourse with the daughter of his half sister. The statute of Texas in this particular is quite similar to the Iowa Code. The conviction was affirmed, but no attack was made upon the indictment, nor was the question of half blood raised. It is apparent, however, that the Texas court, at least by implication, was satisfied that carnal knowledge by the defendant with a daughter of his half sister constituted the crime of incest.

In *Commonwealth v. Reigel* (1913), 22 Pa. Dist. 903, the facts disclose that the defendant had intercourse with a female who was the half sister of his father, having the same mother. It is said:

''The language of a penal statute is to be understood, if possible, in its ordinary popular sense: * * * 'Brother,' 'sister,' these words include the half blood. In reason and according to the weight of authority * * *.'' (Citing cases.)

The case of *Burdue v. Commonwealth* (1911), 144 Ky. 428

(138 S. W. 296), involves but one question, as in the instant case. That question is stated in the opinion: "Is a half sister a sister, within the meaning of the statute?" The Kentucky Statutes 1894, Section 1219, provided that "whosoever shall carnally know his * * * sister * *. * knowing such relation to exist, shall be guilty of a felony." The opinion states: "No distinction is made in this statute between a full sister and a half sister." The judgment of conviction was affirmed. The Revised Civil Code of Louisiana, Article 95 (Act 78 of 1884), explicitly prohibits the marriage between brother and sister, whether of the whole or of the half blood. The statutes of Louisiana are primarily based on the Roman Civil Law, and the inference is strong that the phraseology of the Levitical Law was not followed, nor were the ecclesiastical degrees, as defined by Archbishop Parker, as found in our Code. *State v. Guiton* (1898), 51 La. Ann. 155 (24 So. 784), differentiates the two classes of statutes. In the *Guiton* case, supra, the defendant was convicted of incest with a niece, the daughter of his half brother. It is said in the opinion:

"It is true that the compilers of our Code inserted the qualifying words just stated [half blood]. We incline to the opinion that 'brother' and 'sister,' as used, would include brother and sister of the half blood without the qualifying words of the Articles of the Code; that, as relates to the crime charged, the half blood are meant equally with the whole blood."

In *State v. Reedy* (1890), 44 Kan. 190 (24 Pac. 66), the contention was made that the information did not state a public offense. The information charged that Daniel Reedy was the brother by half blood to the father of Catherine Baker, and it was claimed that they were not so closely allied in blood as to fall within the prohibition of the statute. The contention was overruled. It is said:

"The language employed by the legislature is to be interpreted according to its common meaning; and when the terms 'uncle' and 'niece' are viewed in that light, they will include the half brother of the father and the daughter of a brother of the half blood."

We will not quote further from decisions of our sister states,

but see *State v. Harris* (1908), 149 N. C. 513 (62 S. E. 1090, 128 Am. St. 669) ; *People v. Binger* (1919), 289 Ill. 582 (124 N. E. 583) ; *Territory v. Corbett* (1877), 3 Mont. 50.

In conclusion, it may be said that no decision of any court of last resort of the American Union has been called to our attention which supports the contention of the appellant in the instant case.

The judgment entered by the trial court is—*Affirmed.*

ALBERT, C. J., and EVANS, FAVILLE, and KINDIG, JJ., concur.