**STATE of Delaware**

v.

**SHARON H. and Dennis H.**

Superior Court of Delaware,
New Castle County.

Heard Feb. 5, 1981.
Decided March 27, 1981.

Alex J. Smalls, Deputy Atty. Gen., Wilmington, for the State of Delaware.

Hank R. Bernstein, Wilmington, for Sharon and Dennis H., appellees.

· STIFTEL, President Judge.

State's appeal from the Municipal Court dismissal of information. Defendants, half-brother and half-sister, were charged with (1) engaging in a prohibited marriage in violation of 13 *Del.C.* § 102, and (2) perjury in the third degree in violation of 11 *Del.C.* § 1221, in that they swore falsely and contrary to the requirements of 13 *Del.C.* § 127.

The parties agree to the following facts:

Sharon and Dennis H., appellees, are half-brother and half-sister by blood, born of the same mother, but of different fathers. Sharon, when approximately ten days old, was adopted by the W. family, by whom she was raised. Dennis became a

ward of the State, and was raised in or by various State programs. After reaching maturity, Sharon discovered that she had a half-brother, Dennis. After locating him in the Smyrna Correctional institution, Sharon assisted Dennis in obtaining parole. They were married on July 11, 1979.

On October 31, 1979, appellees were arrested and jailed for violations of 13 *Del.C.* § 102[1] and 11 *Del.C.* § 1221.[2]

In Municipal Court, appellees had argued that even if they were half-brother and half-sister by blood, the provision of 13 *Del.C.* § 102 prohibiting marriages between brothers and sisters was inapplicable to the appellees' situation because under 13 *Del.C.* § 919,[3] Sharon's adoption eliminated any tie between Sharon and Dennis as a matter of law. Appellees had also argued that the provisions of Chapter 9 of Title 13 prohibiting examination of the adoption records prohibited any inquiry into the matter of Sharon's adoption, which would be necessary for the State to prove its allegations.

The Municipal Court dismissed the information charging Sharon and Dennis with a violation of 13 *Del.C.* § 102, stating:

"[T]he Court concludes that the clear and unequivocal language used throughout Chapter 9 of Title 13 of the Code dictates that the State cannot examine into relationships which as a matter of public policy and law are put at rest with adoption." *State v. H.*, M–79–11–0167, 0167D, 0192 and 0192D (Fraczkowski, J., May 28, 1980).

Since the perjury count was based on the denial under oath that Sharon and Dennis were related by blood, the Court held that inquiry would require the same type of prohibited inquiry, and so dismissed all charges.

The State appeals the dismissal, contending the provisions of Chapter 9 of Title 13

of the *Delaware Code* have no bearing in a prosecution brought pursuant to 13 *Del.C.* §§ 101(a)(1)[4] and 102. The appellees reassert the position they took in Municipal Court. Appellees first seek dismissal of the State appeal on procedural grounds.

**I.**

Appellees want the present appeal dismissed pursuant to Superior Court Criminal Rule 48(b), which provides:

"(b) Dismissal by Court. If there is unnecessary delay in presenting a charge to a grand jury or in filing an information or in bringing a defendant to trial, the Court may dismiss the indictment, information or complaint."

Appellees say the State has unnecessarily delayed the prosecution of the appeal: (1) By waiting until the last possible minute to file the appeal; (2) by failing to comply with Superior Court Criminal Rule 38.1(a), which requires the State to file a motion to establish a briefing schedule not later than the next appropriate criminal motion day after the filing of the appeal; and (3) by failing to file its opening brief in accordance with the briefing schedule, which was filed three months late. Simply, did the actions of the State unnecessarily delay the appeal so that the appellees are entitled to have this appeal dismissed?

■■ A motion to dismiss pursuant to Superior Court Criminal Rule 48(b) is left to the sound discretion of the Court. *State v. Fischer*, Del.Supr., 285 A.2d 417 (1971). While the provision is an implementation of the right of an accused to a speedy trial, the provision serves a broader purpose and is not co-extensive with constitutional limitations under the Sixth Amendment. *State v. Fischer, supra; State v. Morris*, Del.Super., 340 A.2d 846 (1975). Rule 48(b) does not

---

**1.** For text of 13 *Del.C.* § 102, see page 1326.

**2.** 11 *Del.C.* § 1221 provides:

"§ 1221. *Perjury in the third degree; Class A misdemeanor.*

A person is guilty of perjury in the third degree when he swears falsely. Perjury in the third degree is a Class A misdemeanor."

**3.** For text of 13 *Del.C.* § 919, see pages 1326–1327.

**4.** For text of 13 *Del.C.* § 101(a)(1), see page 1326.

require the traditional showing of prejudice required by a constitutional challenge of deprivation of the right to a speedy trial, such as death or disappearance of witnesses, or loss of counsel. However, some showing of prejudice, such as unexplained commencement of new prosecutions, anxieties resulting from the repeated commencement of prosecutions for the same offense, or additional expenses as a result of subsequent prosecutions on the same offense is needed to justify the exercise of the Court's discretion in favor of a defendant to dismiss. *State v. Fischer, supra.*

The appellees seek to analogize the facts of this case to the facts involved in *Fischer* and in *State v. Glaindez,* Del.Supr., 346 A.2d 156 (1975). In *State v. Fischer, supra,* the State charged the defendants with the misdemeanors of the same and disposition of lottery tickets. The State commenced prosecution in the Municipal Court. Defendants appeared with counsel on the scheduled date and demanded trial; the State, however, obtained a postponement. Defendants appeared at the second scheduled trial date, ready for trial; the State again postponed the trial. On the third date, defendants again appeared, ready for trial. The State, without explanation, dismissed the charges against both defendants. Three months later, the State commenced a new prosecution on the same charges in the Superior Court by Grand Jury indictments. The Court dismissed the indictments pursuant to Superior Court Criminal Rule 48(b), stating that the process employed by the State in *Fischer* to "transfer" the case from Municipal Court gave the impression of a conscious, unfair manipulation of the criminal process. *State v. Fischer,* Del.Super., 269 A.2d 244 (1970), aff'd Del.Supr., 285 A.2d 417 (1971).

In *State v. Glaindez, supra,* the Court dismissed the State's case against a defendant charged with first degree assault and a weapon's possession charge. Arraignment had been on December 31, 1974. A trial date of March 13, 1975 was set at the pretrial conference on February 7, 1975. The State subpoenaed the victim and his wife on February 19, 1975; the subpoenas were re-turned *non est inventus* on March 5, 1975, with a notation that the victim and his wife were known to have moved to Pennsylvania. The State did not learn of the Sheriff's return until the day before the trial. The State admitted to the Court on the day of trial, however, that it could have learned of the Sheriff's return by calling the Sheriff's office on any date after March 5, 1975, which it failed to do. On that basis, the Court denied the State's request for a continuance, and dismissed the case. See *State v. Glaindez, supra.*

■ Comparing the facts of *Fischer* and *Glaindez* to the present case, I conclude that the appellees have not demonstrated the type of prejudice required for the exercise of this Court's discretionary power to dismiss the State's appeal. In *Fischer* and *Glaindez,* defendants' rights to a speedy trial on the merits were sabotaged by the State. In this case, the appellees were afforded their right to a speedy trial. They chose to oppose the State's charges on a legal basis by a motion to dismiss, rather than to try the case on the merits. The appellees were successful and the informations were dismissed. The State properly exercised its right to an appeal pursuant to 10 *Del.C.* § 9902. Although filed "at the last minute", the State's appeal pursuant to 10 *Del.C.* § 9902 was filed within the applicable period. Since the State has filed its appeal within the period mandated by the Court, appellees cannot be heard to say that the timely filing of the appeal constituted "unnecessary delay".

The State was not prompt in setting a brief schedule and filing its brief. However, the only prejudice appellees claim is (1) that the delay caused them continued offensive publicity; and (2) that they (or their attorney) have been required to make repeated appearances in court. The record shows very few court appearances—no more than are usually made on an appeal under 10 *Del.C.* § 9902.

The prejudice of offensive publicity claimed by the defendants is no more than could reasonably be expected in a case of

this nature. The appellees have shown no prejudice by unusual publicity caused by any delay of the State in moving this appeal.

The motion to dismiss under Superior Court Criminal Rule 48(b) is denied.

## II.

■■ Appellees contend that the State improperly brought this appeal pursuant to 10 *Del.C.* § 9902[5]. They argue that all evidence had been submitted to the Municipal Court, and the Court considered the evidence in its decision to dismiss and, in effect, rendered a Judgment of Acquittal. If the decision is a Judgment of Acquittal, the State's only avenue of appeal is 10 *Del.C.* § 9903.[6] The appellees argue that the State did not obtain leave of this Court for this appeal, and therefore the appeal of the State should be dismissed.

Appellees ignore the language of the decision of the Municipal Court. It clearly states at the top of page 1 that "[t]he record before the Court is most sketchy and counsel have assumed certain facts in argument which are not actually part of the record." *State v. Dennis H. and Sharon H.,* M–79–11–0167, 0167D, 0192 and 0192D (Fraczkowski, J., Municipal Court, May 28, 1980). The Court then proceeded to dismiss the State's informations on the legal bases which will be discussed in Parts III and IV of this opinion. There is no indication in the record that the Municipal Court had heard the evidence when it decided the motion to dismiss. In a non-jury case, if the Court has not begun to hear the evidence,

jeopardy has not yet attached and dismissal of the State's information will entitle the State to an appeal of right pursuant to 10 *Del.C.* § 9902. *State v. Dennis,* Del.Supr., 306 A.2d 729 (1973). I conclude that the State's appeal was properly brought pursuant to 10 *Del.C.* § 9902 and may not be dismissed for failure to seek leave of this Court.

I will now consider the substantive issues.

## III.

Title 13 of the *Delaware Code,* § 101(a)(1) provides:

"§ 101. *Void and Voidable Marriages*

"(a) A marriage is prohibited and void between:

"(1) A person and his or her ancestor, descendant, brother, sister, uncle, aunt, niece, nephew or first cousin . . ."

Title 13 of the *Delaware Code,* § 102 provides:

"§ 102. *Entering into a prohibited marriage; penalty*

"The guilty party or parties to a marriage prohibited by § 101 of this title shall be fined $100, and in default of the payment of the fine shall be imprisoned not more than 30 days."

Title 13 of the *Delaware Code,* § 919 provides:

"§ 919. *General effect of adoption.*

"(a) Upon the issuance of the decree of adoption, the adopted child shall be considered the child of the adopting parent or parents, entitled to the same rights and privileges and subject to the same

---

5. 10 *Del.C.* § 9902 provides in relevant part:
   "§ 9902. Appeal as of right
   "(a) The State shall have an absolute right to appeal to an appellate court a final order of a lower court where the order constitutes a dismissal of an indictment or information or any count thereof, or the granting of any motion vacating any verdict or judgment of conviction where the order of the lower court is based upon the invalidity or construction of the statute upon which the indictment or information is founded or the lack of jurisdiction of the lower court over the person or subject matter."

6. 10 *Del.C.* § 9903 provides:

"§ 9903. Appeal in the discretion of the appellate court.
"The State may apply to the appellate court to permit an appeal to determine a substantial question of law or procedure, and the appellate court may permit the appeal in its absolute discretion. The appellate court shall have the power to adopt rules governing the allowance of the appeal; but, in no event of such appeals shall the decision or result of the appeal affect the rights of the defendant and he shall not be obligated to defend the appeal, but the court may require the Public Defender of this State to defend the appeal and to argue the cause."

duties and obligations as if he had been born in wedlock to the adopting parent or parents.

"(b) Upon the issuance of the decree of adoption, the adopted child shall no longer be considered the child of his natural parent or parents and shall no longer be entitled to any of the rights or privileges or subject to any of the duties or obligations of a child with respect to the natural parent or parents; but, when a child is adopted by a stepparent his relationship to his natural parent who is married to the stepparent shall in no way be altered by reason of the adoption."

Appellants contend that 13 *Del.C.* § 919 must be read to end *all* relationships between the adopted child and its natural parents and kin, including the blood ties that the State asserts are the basis for the provision of 13 *Del.C.* § 101(a)(1). The State opposes such an interpretation of 13 *Del.C.* § 919, contending that the Legislature did not intend such a result when it enacted 13 *Del.C.* § 919. The defendants seek to support their interpretation of 13 *Del.C.* § 919 with various cases holding, in one fashion or another, that, by adoption, a child is given the status of a natural child as to his or her adopted parents, and any legal relationship to the child's natural parents is ended. See *In re Estate of Edith Collins*, 393 Pa. 195, 142 A.2d 178 (1954); *Clapp v. Brighi*, 93 N.H. 431, 43 A.2d 151 (1945); *Logan v. Coup*, 238 Md. 253, 208 A.2d 694 (1965); *In re Klines Adoption*, 24 Del.Ch. 427, 8 A.2d 505 (1939); *In re Adoption of Baby Boy (Benjamin)*, 452 Pa. 149, 305 A.2d 360 (1973). However, these cases deal exclusively with either the question of the child's right to inherit from the adopted parents, or the question of the effect of the adoption on the rights and duties of the natural parents as to the adopted child. The cases do not in any fashion address the issue presently before the Court, and so are irrelevant to the present question. The cases cited by the State, *Israel v. Allen*, 195 Colo. 263, 577 P.2d 762 (1978); and *In re Enderle Marriage License*, 1 Pa. D & C Reports 2d 114 (Phila. County 1954), are similarly inappropriate, since they deal solely with the issue of whether a man may marry his *adopted* sister. It is clear that this issue may be resolved solely by an interpretation of the relevant statutes.

Section 101(a)(1) of Title 13 is what is commonly termed a consanguinity statute. These statutes exist in one form or another in the majority of the states of our nation. In general, a consanguinity statute prohibits marriages between blood relatives in the lineal, or ascending and descending lines. The historical basis for these statutes is rooted in English Canonical Law, which enforced what is considered to be a Biblical prohibition on incestuous relationships. Freedman, *Law of Marriage and Divorce in Pennsylvania*, 2d Ed., § 163 (1957); Schouler *On Marriage, Divorce, Separation and Domestic Relations*, 6th Ed., § 16 (1921).

Another reason advanced for the enactment of incest and consanguinity statutes is a generally accepted theory that genetic inbreeding by close blood relatives tends to increase the chances that offspring of the marriage will inherit certain unfavorable physical characteristics. Clark, *Law of Domestic Relations*, § 2.8 (1968). Even if this theory is accepted, it is unlikely that it was the original basis for consanguinity statutes, given the relative newness of the theory and the ancient history of these statutes; however, it is possible that this theory served as an additional basis for the revision and reenactment of the various statutes.

■ In any case, it is clear that consanguinity statutes were designed to prohibit marriages between blood relatives. The Delaware consanguinity statute is no exception. Although the language of the statute has been modified over the years, the clear intention of each statute has been the prohibition of marriages between blood relatives. See *Del.Code of 1852*, § 1435; *Del. Code 1915*, § 2992; *Del.Code 1935*, § 3485; 13 *Del.C. 1953*, § 101.

The present version of Delaware's consanguinity statute, 13 *Del.C.* § 101(a)(1), expressly prohibits marriages between brother and sister. Although the Delaware

Courts have never addressed the issue, other courts which have applied similar statutes have concluded that the policy behind the prohibition of marriages or sexual relations between blood relatives requires the Court to include relatives of half-blood in the prohibition. See *State v. Skinner*, 132 Conn. 163, 43 A.2d 76 (1945); *State v. Lamb*, 209 Iowa 132, 227 N.W. 830 (1929); *State v. Smith*, 101 S.C. 293, 85 S.E. 958 (1915). See also 72 *A.L.R.2d* 706. Given the obvious intent of 13 *Del.C.* § 101(a)(1) to prohibit marriages between blood relatives, it is clear that a reasonable interpretation of 13 *Del.C.* § 101(a)(1) would prohibit the marriage between the appellees.

■ However, appellees contend that 13 *Del.C.* § 101(a)(1) is a penal statute, insofar as it is applied through 13 *Del.C.* § 102 to criminally punish anyone who enters into a prohibited marriage. As a penal statute, it must be strictly construed in favor of the appellees. Thus, appellees argue, since 13 *Del.C.* § 101(a)(1) does not expressly prohibit marriages between a half-brother and half-sister, this Court must construe the statute so as to exclude a marriage between half-brother and half-sister from the reach of 13 *Del.C.* § 101(a)(1). I disagree.

■ In general, the doctrine of strict construction requires that where a penal statute is ambiguous, any ambiguity must be resolved in favor of the defendant and against the State [or Federal Government]. *Adamo Wrecking Co. v. United States*, 434 U.S. 275, 98 S.Ct. 566, 54 L.Ed.2d 538 (1978); *United States v. Bass*, 404 U.S. 336, 92 S.Ct. 515, 30 L.Ed. 488 (1971); *State v. Ross*, Del.Ct. of Gen. Sessions, 4 Terry 490, 50 A.2d 410 (1947). Penal statutes are construed narrowly to insure that no individual is convicted unless a fair warning has been given to the public in understandable language what activities the statute prohibits. *Mourning v. Family Publications Service*, 411 U.S. 356, 93 S.Ct. 1652, 36 L.Ed.2d 318 (1973); *State v. Chase*, Del.Super., 11 Terry 383, 131 A.2d 178 (1957). However, the doctrine of strict construction is not violated by allowing the language to have its full meaning where that construction is in harmony with the context and supports the policy and purposes of the Legislature. *Donnelley v. United States*, 276 U.S. 505, 48 S.Ct. 400, 72 L.Ed. 676 (1928). In essence, strict construction is merely another aid to construction of a statute; it does not eliminate consideration of other guides to interpretation. If a statute can have two meanings, the principle of strict construction does not require the Court to accept automatically the meaning most favorable to the defendant; the Court's general objective is still to determine the general intent of the Legislature. Thus, strict construction does not require the Court to adopt an unreasonable construction, or one which results in an injustice which the Legislature should not be presumed to have intended. *Angelini v. Court of Common Pleas*, Del. Supr., 8 Storey 84, 205 A.2d 174 (1964).

Looking to the language of 13 *Del.C.* § 101(a)(1), I do not see that there is any reasonable ambiguity as to whether the marriage of the appellees was prohibited by that statute. The statute clearly prohibits marriages between brother and sister, as well as other blood relatives. No exception is made for relatives of the half-blood or blood relatives adopted by other families. To engraft such exceptions on the plain language of 13 *Del.C.* § 101(a)(1), because it does not expressly include such relations, requires an unreasonable interpretation of the statute which the doctrine of strict construction does not mandate. I therefore conclude that the doctrine of strict construction does not shield the appellees from 13 *Del.C.* §§ 101(a)(1) and 102.

Having concluded that 13 *Del.C.* § 101(a)(1) would normally prohibit marriage between the appellees, the question becomes whether the effect of 13 *Del.C.* § 919 is to destroy all ties between an adopted child and the child's natural relatives, including the ties of blood. As quoted earlier, 13 *Del.C.* § 919(b) states:

"(b) Upon the issuance of the decree of adoption, the adopted child shall no longer be considered the child of his natural parent or parents, and shall no longer be entitled to any of the rights or privileges

or subject to any of the duties or obligations of a child with respect to the natural parent or parents...".

Appellees contend that the proper interpretation of this statute is that 13 *Del.C.* § 919 ends all relationships between an adopted child and its natural relatives, including blood relationships, and so the blood relationship prohibited by 13 *Del.C.* § 101(a)(1). After looking at the plain language of the statute, however, I conclude that the General Assembly did not intend that 13 *Del.C.* § 919 have such an effect.

■ Appellees would have this Court interpret the words "duties and obligations" to include compliance with criminal provisions such as 13 *Del.C.* § 101(a)(1), so that the language of 13 *Del.C.* § 919(b) stating that an adopted child "shall no longer be ... subject to any of the duties or obligations of a child with respect to his natural parent or parents ..." would legally eliminate the blood tie between an adopted child and its natural relative, barring prosecution under 13 *Del.C.* § 102 if these two later marry. However, such a literal interpretation of 13 *Del.C.* § 919 is clearly inconsistent with the obvious intent of the statute to eliminate such duties as the right to custody in the natural parents, and the reciprocal duties or obligations of the child and the natural parents to support one another. See, for example, 13 *Del.C.* §§ 501, 503. As stated in *Nationwide Mutual Insurance Co. v. Krongold*, Del.Supr., 318 A.2d 606 (1974), and *Thomas v. Veltre*, Del.Super., 381 A.2d 245 (1977),

> "The object of statutory construction is to give a sensible and practical meaning to the statute as a whole in order that it may be applied in future cases without difficulty ... and if a literal interpretation leaves a result inconsistent with the general statutory intention, such interpretation must give way to the general intent."

To interpret 13 *Del.C.* § 919 as the appellees argue would require that I in effect amend 13 *Del.C.* § 101(a)(1) by implication. Such an interpretation would violate the general rules of statutory construction which require that a statutory ambiguity be interpreted in accordance with pre-existing law, unless there is an "irreconcilable inconsistency" between the statutes; and that amendment of existing law by implication is disfavored. *Wilmington Housing Authority v. Greater St. John Baptist Church*, Del.Supr., 291 A.2d 282 (1972).

■ If 13 *Del.C.* § 919(b) is read to be limited to eliminating only the legal ties between the adopted child and its natural parents, there is no irreconcilable inconsistency between the two statutes, and 13 *Del.C.* § 101(a)(1) should not be considered to be impliedly amended by 13 *Del.C.* § 919. Thus, 13 *Del.C.* § 919 does not bar the application of 13 *Del.C.* §§ 101(a)(1) and 102 to the facts of the present case.

### IV.

■ Appellees' last argument in support of the decision below contends that the strong public policy of maintaining the secrecy of adoption records as evidenced by 13 *Del.C.* §§ 923 and 924 bars *any* inquiry into the facts of the adoption, even where the information sought is not to be obtained from the adoption records. The Municipal Court accepted this argument, and ruled that because the prosecution under 13 *Del.C.* § 102 and 11 *Del.C.* § 1221 required an inquiry into this prohibited area, the prosecution was barred. The State disagrees and asserts that 13 *Del.C.* §§ 923 and 924 require only that the adoption records be kept confidential, without prohibiting an inquiry into the facts of the adoption if such can be accomplished with extrinsic facts.

At the time Sharon was adopted, adoptions were handled by the Superior Court. 13 *Del.C.* § 923 provided:

> "§ 923. *Confidential nature of information; old and new birth certificates*
>
> "All information regarding any adoption which is furnished to any State Registrar shall be confidential and not open to public inspection. The names of the natural parents or the original name of the child shall not be furnished to the

adoptive parents, nor shall the name of the adoptive parents be furnished to the natural parents, and after the entry of the decree of adoption, the original record of birth shall be impounded and all birth certificates shall be issued in the adoptive name only, if a new name has been assumed, and shall contain no reference to the original name or background or the fact of adoption."

13 *Del.C.* § 924 provided:

"§ 924. *Confidential nature of Court records*

"All records of any adoption shall be treated as strictly confidential and shall be kept by the prothonotary in a sealed container which shall be opened only upon the order of the Judge of the Superior Court concerned."

The General Assembly transferred original jurisdiction over adoption proceedings to the Family Court in 1980. Although 13 *Del.C.* § 923 was not amended, 13 *Del.C.* § 924 was amended to conform with the change in jurisdiction. Section 924 now provides:

"§ 924. *Confidential nature of Court records*

"All Court records of any adoption shall be treated as strictly confidential and shall be kept by the Clerk of Court in a sealed container which shall be opened only upon the order of the Judge of the Family Court concerned. Nothing in this section shall be construed in such a way as to restrict the Department of Health and Social Services, Division of Social Services or an authorized agency from releasing nonidentifying information in its records to any of the parties to the adoption. Identifying information, such as names and addresses, shall not be released by the Division of Social Services or an authorized agency except by order of the Court."

There is no indication that the provisions of 13 *Del.C.* §§ 923 and 924 were intended to eliminate any inquiry into the facts surrounding an adoption, *including* inquiry *outside* the adoption records. I conclude that 13 Del.C. §§ 923 and 924 do not prohibit the State from presenting its case against the appellees in the manner in which it intends to proceed.

For the reasons stated, I decide that the Municipal Court erred in dismissing the informations charging Sharon and Dennis H. with violations of 13 *Del.C.* § 102 and 11 *Del.C.* § 1221. The decision of the Municipal Court is reversed and the case is remanded to the Municipal Court for action that is consistent with this decision.

IT IS SO ORDERED.