684 A.2d 439

**Robert Allan TAPSCOTT**

v.

**STATE of Maryland.**

**No. 135, Sept. Term, 1995.**

Court of Appeals of Maryland.

Nov. 4, 1996.

Karl G. Feissner (Robyn L. Behrman, Feissner & Slatkin, on brief), Burtonsville, for petitioner.

Diane E. Keller, Assistant Attorney General (J. Joseph Curran, Jr., Attorney General, on brief), Baltimore, for Respondent.

Argued before MURPHY,* C.J., and ELDRIDGE, RODOWSKY, CHASANOW, KARWACKI, BELL and RAKER, JJ.

MURPHY, Chief Judge.

In this case, we address whether half-blood relationships are included within Maryland's prohibition against incest, codified as Maryland Code (1957, 1996 Repl.Vol.), Article 27, § 335, which provides:

> Every person who shall knowingly have carnal knowledge of another person, being within the degrees of consanguinity within which marriages are prohibited by law in this State, shall be deemed guilty of a felony.... '

## I

### A

Maryland Code (1984, 1991 Repl.Vol.) § 2–202 of the Family Law Article lists the specific relationships within which marriage is prohibited. Section 202(c)(1)(xii) bars a man from marrying his sister's daughter, and § 202(c)(2)(iv) declares that a woman may not marry her mother's brother. Thus,

---

* Murphy, C.J., participated in the hearing of the case, in the conference in regard to its decision and in the adoption of the opinion, but he had retired from the Court prior to the filing of the opinion.

Article 27, § 335 prohibits carnal relations between a man and his niece. Section 2–202 does not state whether it applies to both whole-blood and half-blood relationships.

## B

On May 13, 1994, Robert Allan Tapscott was convicted of two counts of incest following a jury trial before the Circuit Court for Prince George's County (Clark, J.). During the trial, the State introduced evidence to show that Tapscott engaged in intercourse with "K.C." on two occasions. The State also introduced evidence demonstrating that Tapscott and K.C.'s mother had the same father and were therefore half-blood siblings. Thus, according to the State's evidence, K.C. was Tapscott's half-blood niece.

Following his conviction, Tapscott appealed to the Court of Special Appeals, raising various arguments. After the Court of Special Appeals affirmed the incest convictions—*Tapscott v. State*, 106 Md.App. 109, 664 A.2d 42 (1995)—Tapscott petitioned this Court for a writ of certiorari, which we granted.

## C

Tapscott argues that § 2–202 of the Family Law Article does not prohibit marriage between half-blood relatives. He asserts that because § 2–202 does not specifically mention half-blood relatives, this Court cannot extend § 2–202's definition to include such relationships. Tapscott contends that to do so would violate the principle of strict construction of penal statutes. Finally, Tapscott claims that the legislature's specific reference to half-blood relations in Maryland Code (1974, 1991 Repl.Vol.) § 1–204 of the Estates and Trusts Article demonstrates that the legislature has been aware of half-blood relationships and would have expressly listed them in Family Law § 2–202 if it had intended to include them. The State, on the other hand, contends that § 2–202 of the Family Law Article prohibits marriage between half-blood relations to the same extent as whole-blood relations.

## II

### A

As Tapscott correctly notes, criminal statutes must be strictly construed in favor of the defendant, *Jones v. State*, 304 Md. 216, 220, 498 A.2d 622 (1985), and "courts will not extend the punishment to cases not plainly within the language used." *State v. Archer*, 73 Md. 44, 20 A. 172 (1890), quoted in *State v. Fabritz*, 276 Md. 416, 422, 348 A.2d 275 (1975), *cert. denied*, 425 U.S. 942, 96 S.Ct. 1680, 48 L.Ed.2d 185 (1976). This rule of construction has been referred to as the "rule of lenity." *See State v. Purcell*, 342 Md. 214, 229, 674 A.2d 936 (1996).

Relying on the rule of lenity, Tapscott argues that because half-blood relationships have not been specifically included within the list of prohibited relationships in § 2–202, we must construe § 2–202 to exclude such relationships. To support his contention, Tapscott cites *State v. Craig*, 254 Kan. 575, 867 P.2d 1013 (1994), *People v. Baker*, 69 Cal.2d 44, 69 Cal.Rptr. 595, 442 P.2d 675, 676 (1968), and *State v. Bartley*, 304 Mo. 58, 263 S.W. 95, 95 (1924). In each of these cases, courts held that a strict construction of the relevant incest statutes required the exclusion of half-blood relationships from the statutes' prohibitions. In reaching this conclusion, however, the courts expressly relied on the fact that the relevant statutes explicitly prohibited relations between half-blood brothers and sisters but made no reference to any other half-blood relationships. *See Craig, supra*, 867 P.2d at 1015 (statute forbad marriage or sexual relations between a person and his "child, grandchild of any degree, brother, sister, half-brother, half-sister, uncle, aunt, nephew, or niece"); *Baker, supra*, 69 Cal.Rptr. at 596, 442 P.2d at 676 (statute forbad marriage between "parents and children, ancestors and descendants of every degree, and between brothers and sisters of the half as well as the whole blood, and between uncles and nieces or aunts and nephews"); *Bartley, supra*, 263 S.W. at 95 (statute defined incest as sexual relations between "grandparents and grandchildren of every degree, brother and sisters of the half, as well as of the whole, blood, uncles and nieces,

aunts and nephews"). In each case, the courts inferred that the specific inclusion of some half-blood relationships was intended to exclude those half-blood relationships not mentioned. *See Craig, supra,* 867 P.2d at 1016; *Baker, supra,* 69 Cal.Rptr. at 596, 442 P.2d at 676 (concluding that "the Legislature by expressly including relationships between brothers and sisters of the half blood and not so specifying as to more distant relatives has evinced the intention to exclude such persons from the prohibitions of the statute"); *Bartley, supra,* 263 S.W. at 96 (adopting the view that "[w]hen the Legislature mentioned brothers and sisters of the half blood, it necessarily excluded all other relationships of the half blood").

In contrast, courts interpreting statutes with no specific mention of half-blood relationships have included such relationships within the incest prohibition.[1] *See Singh v. Singh,* 213 Conn. 637, 569 A.2d 1112, 1121 (1990) (according common meaning to terms "uncle" and "niece" and determining that half-blood relationships fall within incest statute); *State v. Sharon H.,* 429 A.2d 1321, 1326–28 (Del.Super.1981) (interpreting statute that prohibited marriage between a person and "his or her ancestor, descendant, brother, sister, uncle, aunt, niece, nephew or first cousin" to include half-blood relatives);

---

**1.** At one time, it appears that statutes such as those in *Craig, Baker,* and *Bartley* were also generally interpreted to include half-blood uncles and aunts within the incest definition. *See State v. Reedy,* 44 Kan. 190, 24 P. 66 (1890), *overruled, Craig, supra,* 867 P.2d at 1016; *State v. Guiton,* 51 La.Ann. 155, 24 So. 784, 784 (1898) (applying French civil law to include half-uncles and half-nieces in a statute prohibiting marriage between "brother and sister, whether of the whole or of the half blood, ... and also between the uncle and the niece, the aunt and the nephew"); *State v. Harris,* 149 N.C. 513, 62 S.E. 1090, 1090–91 (1908) (holding that even though the statute specifically referred to half-blood siblings, and made no mention of half-blood uncles or nieces, "[t]he relation of uncle and niece must of necessity be of the half blood ... We think the defendant and his niece, the daughter of his half-sister, clearly within the statute."); *People v. Womack,* 167 Cal.App.2d 130, 334 P.2d 309, 311 72 A.L.R.2d 703 (1959) ("It has been held generally that prohibitions against incestuous relationships apply to designated near relatives, whether by the half blood or the whole blood."), *overruled, Baker, supra,* 69 Cal.Rptr. at 599, 442 P.2d at 679. *See also* W.R. Habeeb, Annotation, *Sexual Intercourse Between Persons Related by Half Blood as Incest,* 72 A.L.R.2d 706, 707 (1960).

*State v. Skinner,* 132 Conn. 163, 43 A.2d 76, 77 (1945), overruled on other grounds, *State v. Tillman,* 152 Conn. 15, 202 A.2d 494 (1964) (holding that "the word sister, as used in the [incest] statute, applies to and includes a half sister"); *State v. Lamb,* 209 Iowa 132, 227 N.W. 830, 831–32 (1929) (finding that "sister" includes both whole-blood and half-blood relations within the meaning of the incest statute); *Commonwealth v. Ashey,* 248 Mass. 259, 142 N.E. 788 (1924) (convicting a half-blood uncle and niece of violating statutes providing that "no man shall marry his . . . sister's daughter" and "no woman shall marry her . . . mother's brother"); *State v. Smith,* 101 S.C. 293, 85 S.E. 958, 959 (1915) (noting that "the fact that the relationship in this case is only of the half blood . . . is of no consequence; for . . . the words used in the statute must be taken in their ordinary meaning, and therefore include relations of the half blood"); *Burdue v. Commonwealth,* 144 Ky. 428, 138 S.W. 296, 297 (1911) (including a half-blood sister within the prohibitions of a statute making it a crime for a person to "carnally know his . . . sister," and noting that no distinction is made between full blood and half blood sisters for purposes of inheritance); *Shelley v. State,* 95 Tenn. 152, 31 S.W. 492 (1895) (including half-blood brothers and sisters within the prohibitions of an incest statute making no specific provisions for half-blood relationships); *State v. Wyman,* 59 Vt. 527, 8 A. 900 (1887) (applying incest statute equally to those of whole and half blood); *see also State v. Allen,* 304 N.W.2d 203, 207 (Iowa 1981); A.W. Collins, Jr., Annotation, *Sexual Intercourse Between Persons related by Half Blood as Incest,* 34 A.L.R.5th 723 §§ 2, 4 (1995); W.R. Habeeb, Annotation, *Sexual Intercourse Between Persons Related by Half Blood as Incest,* 72 A.L.R.2d 706, 707 (1960). In each of these cases, a statute specifying prohibited relationships, with no mention of "half blood" or "whole blood," was interpreted as applying to half-blood relationships as well as whole-blood ones.

## B

While the rule of lenity requires that penal statutes be strictly construed, "[a] rule should not, however, be invoked

to subvert the purposes of the statute." *State v. Kennedy,* 320 Md. 749, 754, 580 A.2d 193 (1990), *quoted in Purcell, supra,* 342 Md. at 229, 674 A.2d 936. Because the cardinal rule of statutory construction is to ascertain and carry out the intent of the legislature, *Montgomery County v. Buckman,* 333 Md. 516, 523, 636 A.2d 448 (1994), "[t]he intention of the legislature in drafting a statute should control a court's construction of that statute." *Kennedy, supra,* 320 Md. at 755, 580 A.2d 193. Our examination of the language and history of § 2–202 leads us to conclude that it applies to the relationships therein enumerated regardless of whether half-blood or whole-blood relatives are involved.

 The proper starting point in the interpretation of any statute is the plain language of the statute itself. *Thanos v. State,* 332 Md. 511, 522, 632 A.2d 768 (1993). Absent evidence to the contrary, the words in a statute should be given their generally understood meaning, *Comptroller of Treasury v. Jameson,* 332 Md. 723, 732–33, 633 A.2d 93 (1993), or their "ordinary and natural import." *Revis v. Maryland Automobile Ins. Fund,* 322 Md. 683, 686, 589 A.2d 483 (1991). The question before us, then, is whether the terms "mother's brother" and "sister's daughter," as used in § 2–202, are commonly understood to include relations of half-blood sisters and brothers as well as those of whole-blood siblings.

Several courts have addressed this issue and concluded that the terms "brother" and "sister" are commonly understood to include half-blood siblings. *See Sharon H., supra,* 429 A.2d at 1328 (finding half-blood brothers and sisters to be within the natural meaning of "brother" and "sister"); *People v. Elliff,* 74 Colo. 81, 219 P. 224, 225 (1923) (citing various dictionaries and concluding that " 'brother and sister' when used without any qualification, include 'half-brothers and half-sisters' "); *Lamb, supra,* 227 N.W. at 832; *Skinner, supra,* 43 A.2d at 76; *Wyman, supra,* 8 A. at 900; *see also* Black's Law Dictionary 194, 1387 (6th ed.1990) (including both whole-blood and half-blood siblings in definitions of "brother" and "sister");. We agree that "brother" and "sister" as used in § 2–202 of the

Family Law Article include half-blood siblings as well as full blood siblings, and that "mother's brother" and "sister's daughter" therefore include half-blood uncles and nieces.

The history of Maryland's marriage prohibitions supports our conclusion that § 2–202 prohibits marriages between half-blood relations to the same degree as full-blood relations. In England, "[a]lthough incest was punished by the ecclesiastical courts . . ., it was not an indictable offense at common law and punishment was left entirely to the ecclesiastical courts." *Singh, supra,* 569 A.2d at 1115. Originally, "[t]he ecclesiastical courts followed the interdiction of Levitical law which prohibited marriages between persons more closely related than fourth cousins . . .; no distinction was made between persons related by affinity or consanguinity." *Baker, supra,* 69 Cal.Rptr. at 598, 442 P.2d at 678. In 1540, following Henry VIII's break with the Catholic Church, a statute was passed limiting the prohibitions against marriage to relatives closer than first cousins. *Singh, supra,* 569 A.2d at 1115; *Baker, supra,* 69 Cal.Rptr. at 598, 442 P.2d at 678. The English courts and authorities consistently interpreted these marriage prohibitions to include half-blood relations as well as those of the full-blood. *See Singh, supra,* 569 A.2d at 1117 (citing English sources); *Ashey, supra,* 142 N.E. at 788 (same).

The American jurisdictions departed from English law by declaring incest to be a crime, in addition to prohibiting marriage between specified individuals. The majority of states extended these criminal prohibitions to first cousins and beyond, and "generally define[d] incest as marriage or sexual intercourse between persons too closely related in consanguinity or affinity to be entitled to marry legally." *Singh, supra,* 569 A.2d at 1115; *see also Baker, supra,* 69 Cal.Rptr. at 598, 442 P.2d at 678; Collins, *supra,* §§ 2, 4[a] ("Courts have generally held or recognized that sexual intercourse between persons related by half blood constitutes incest[ ] in cases involving . . . uncles and nieces of the half blood"). Maryland's statutes fit this pattern, with Art. 27, § 335 defining incest as carnal relations between individuals who are prohibited from marrying under § 2–202.

In *Ashey, supra,* 142 N.E. at 788, the Massachusetts Supreme Judicial Court traced the predecessor of its incest statute back to 1695 and concluded that the original statute had been modeled upon English ecclesiastical law. The court held that "[w]hen our original law was enacted in 1695–96, it seems reasonable to assume that the interpretation of the ecclesiastical law as it then existed in England was adopted, treating the half blood relation like the whole blood." *Id.* As a result, the court concluded that half-blood relations were likewise included in the Massachusetts statute. *Id.*

The Connecticut Supreme Court took a similar approach in *Singh, supra,* 569 A.2d at 1115. There, the court found that incest had been a crime since 1702 with very little substantive change in the language of the statute since that time. *Id.* at 1115–16. Citing *Ashey,* the court concluded that "[i]t is fair to assume that, when the incest statute was enacted in 1702, the framers were aware of and adopted the interpretation of the ecclesiastical law as it then existed in England, thus treating the relation of the half blood like that of the whole blood." *Id.* at 1117.

As with the Massachusetts and Connecticut statutes, § 2–202's predecessors can be traced to at least the eighteenth century. In ch. 12, § 1 of the Acts of 1777, the Maryland legislature enacted a "Table of the degrees of kindred and affinity within which no persons related shall marry together." In ch. 12, § 2, the legislature imposed a penalty of "five hundred pounds current money" or banishment forever from the state upon anyone marrying "within the three degrees of lineal direct consanguinity, or within the first degree of lateral consanguinity." This enactment mirrors the structure of § 2–202, with § 2–202(b) prohibiting any marriage within three degrees of direct lineal consanguinity or within the first degree of collateral consanguinity, and with § 2–202(c) providing an enumerated list of "[c]ertain [prohibited] marriages within other degrees of affinity or consanguinity." With the exception of some deletions from the list of prohibited relationships in § 2–202(c) of the Family Law Article, the modern statute is largely the same as the one passed more than 200

years ago. No changes have been made to the statute that would indicate a change in the legislature's intent with respect to whether half-blood relationships should be included within § 2–202's marriage prohibitions.

We agree with the Massachusetts and Connecticut Supreme Courts and conclude that, given the history of marriage and incest prohibitions in English and American law, and the historic role of English law in forming the law of this State, it is appropriate to assume that the framers in 1777 "were aware of and adopted the interpretation of ecclesiastical law as it then existed in England." *Singh, supra,* 569 A.2d at 1117. As a result, we conclude that § 2–202 prohibits marriages between half-blood relations to the same extent that it prohibits marriages between full blood relations.

Because half-blood uncles and nieces are encompassed within the terms "mother's brother" and "sister's daughter," there was no need for the legislature to refer specifically to half-blood relations in the statute, and the absence of such a reference does not indicate that half-blood relations are excluded. As the Delaware Superior Court stated in *Sharon H., supra,* 429 A.2d at 1328, "[t]o engraft such exceptions on the plain language of [the incest statute], because it does not expressly include such relations, requires an unreasonable interpretation of the statute which the doctrine of strict construction does not mandate."

## C

Tapscott is similarly in error in his contention that the legislature's mention of half-blood relations in § 1–204 of the Estates and Trusts Article implies that the legislature intended to exclude such relationships from the prohibitions of § 2–202 of the Family Law Article. Section 1–204 of the Estates and Trusts Article provides that "[a] relative of the half blood has the same status as a relative of the whole blood." Because the rules relating to intestate succession have a different context and origin from incest prohibitions, however, Tapscott's comparison is inapposite.

In *Wyman, supra,* 8 A. at 900, the Vermont Supreme Court rejected a similar attempt to use laws relating to intestate succession to interpret statutes regulating marriage and prohibiting incest. There, the court addressed the contention that half-blood relations were excluded from the incest statute because they were also excluded from the common-law rules relating to intestate succession. *Id.* In rejecting this argument, the court stated:

It is true that by the common law a brother of the half-blood could not inherit, but this was a rule for the regulation of the descent of property, and had no broader scope. It did not undertake to affect the relations of brethren of the half-blood any further than to prescribe, for certain reasons having their origin in the ancient system of feudal tenures, that, in the descent of the inheritance, a brother of the half-blood should be left out. The common-law rule, therefore, would have no force in a case of this kind. . . .

*Id.*

Tapscott's contention fails for a similar reason. Our modern statutes relating to incest and intestate succession have evolved from different systems with different underlying rules. As noted in *Wyman, supra,* English common law courts specifically forbade half-blood relations from inheriting. Thus, it should not be surprising that the legislature specifically mentioned half-blood relations in § 1–204, a statute designed to reverse the pre-existing common law rule. As we have already discussed, the English ecclesiastical courts and the majority of American courts interpreting incest laws, in contrast, have treated half-blood and full-blood relatives equivalently, and it should be similarly clear that the legislature felt no need to distinguish between half-blood and full-blood relationships when it enacted Maryland's prohibition on incest.

For these reasons, we conclude that § 2–202 of the Family Law Article prohibits half-blood relations from marrying to the same degree that it prohibits whole-blood relations from

doing so. As a result, Tapscott's sexual liaisons with his half-blood niece were similarly prohibited by Article 27, § 335.[2]

*JUDGMENT AFFIRMED, WITH COSTS.*

---

2. Tapscott also argues that if we interpret § 2–202 of the Family Law Article as encompassing half-blood relations, then Maryland's incest law is unconstitutionally vague. We do not address this point in detail because it has not been raised previously, and therefore has not been preserved for our review. Maryland Rule 8–131. Given that our interpretation of § 2–202 is wholly consistent with the interpretations given to similar statutes by the other courts addressing this issue, and in light of our conclusion that Maryland's statute relied on pre-existing English law and uses terms within their commonly accepted meaning, such a challenge is unlikely to succeed in any event. *See Williams v. State*, 329 Md. 1, 10–11, 616 A.2d 1275 (1992).