## IN THE MATTER OF THE ADOPTION OF DONALD GEORGE KLINE.

*New Castle, Sept. 20, 1939.*

*Thomas H. Wingate,* for Lester C. and Emily L. Cubbage.

*David F. Anderson,* for Miriam G. Kline.

SPEAKMAN, Judge, delivering the opinion of the court:

It is, of course, conceded that the mother has the right to the custody and control of her illegitimate child unless by her own conduct or neglect she has forfeited such right, so the sole question to be determined at this time is whether the mother abandoned her child, within the meaning of the statute, as alleged in the petition. If there has been no such abandonment the prayer in her answer should be granted, otherwise it may be denied.

From the uncontradicted testimony it appeared that the child was born out of wedlock on June 1, 1934, at which time the mother, Miriam G. Kline, was about seventeen years of age. She then was and still is a resident of Sunbury, Pennsylvania. In order to avoid unpleasant notoriety, the mother some time before the birth of the child went to the home of the petitioners in this county and state and while there the child was born. Shortly after the birth of the child the mother returned to her home in Pennsylvania,

leaving the child with the petitioners, and it has continued in their possession down to the present time. Lester C. Cubbage, one of the petitioners, is a step-brother of the mother. Prior to April of this year the mother and the petitioners were on cordial and friendly terms. Following the birth of the child there has been no demand or request made by the petitioners upon the mother that she provide support for the child, neither has any offer been made to the petitioners by the mother to furnish such support. The only contribution ever made by the mother to such support was of a small amount of clothing during the past year. Since the birth of the child the mother has seen it about eight times, each time being at the petitioners' home. No demand or request was ever made by the mother to the petitioners, or either of them, for the return of the child to her, neither has any proceeding been resorted to by the mother for the purpose of securing the custody of the child. Following the birth of the child the mother had but little employment for about two years. During the past three years she has been almost continuously employed and her earnings at least during the past year have been sufficient to provide for the support of the child.

During the spring of this year the petitioners decided to institute proceedings for the adoption of the child and in connection therewith they requested the mother's consent. This she refused to give, thereafter these proceedings were instituted.

By other testimony it was established that immediately after the birth of the child the mother stated "That she did not want it, and if the petitioners did not want it she would have to put it in a home." The mother herself, at the hearing testified as follows: "I told them [the petitioners] I would let them have it [the child]." "Last April was when I first wanted the child."

In the present case, in order to give the court jurisdiction it is necessary to find not only that the child was

abandoned by its mother, as ordinarily understood in adoption proceedings, but also that it was so abandoned in at least one of the manners referred to in the statute.

Where not restricted or otherwise affected by statute, what constitutes abandonment of a child so as to permit its adoption without the consent of its parents has been stated in different languages in text books and by courts, yet there is no material difference in the meaning of the language used.

In 2 *C. J. S., Adoption of Children,* § 21, *page* 388, the following appears:

"Ordinarily, abandonment by a parent, to justify in law the adoption of his child by a stranger without his consent, is conduct which evinces a settled purpose to forego all parental duties."

And in 1 *Am. Jur.,* title, *Adoption of Children, Sec.* 42, *p.* 643, it is stated that:

"Abandonment imports any conduct on the part of the parent which evinces a settled purpose to forego all parental duties and relinquish all parental claims to the child."

A few of the cases so holding are: *Winans v. Luppie,* 47 *N. J. Eq.* 302, 20 *A.* 969; *Appeal of Weinbach,* 316 *Pa.* 333, 175 *A.* 500; *Forst's Adoption,* 12 *Pa. Dist. & Co., R.* 739; *Denny's Adoption,* 11 *Pa. Dist. & Co. R.* 611; *In re Dein's Will,* 135 *Misc.* 244, 237 *N. Y. S.* 658; *In re Potter,* 85 *Wash.* 617, 149 *P.* 23.

Under the law of this state (*Section* 3550, *Revised Code of* 1935, as amended by *Sec.* 1 *of Chap.* 187, *Vol.* 41) in the event such an abandonment is found to exist, it must also appear that the child was left (1) in destitute circumstances, or (2) without proper food, shelter or clothing, or (3) without being visited or having payments made toward his or her support for a period of at least one year by his or her parents, guardian or other lawful custodian without good reason.

Of the above it will only be necessary to consider the meaning of the phrase "in destitute circumstances."

Counsel for the petitioners has directed attention to the fact that the courts of this state have considered the meaning of the words "in destitute circumstances" as contained in the Desertion and Support statute of this State. *Chap. 87 of the Revised Code of* 1935.

The Supreme Court in *Donaghy v. State,* 6 *Boyce* (29 *Del.*) 467, 100 *A.* 696, 710, said: ·

"A child three years old, having no property, is in 'destitute or necessitous circumstances' when the father can but does not, and the mother cannot, provide for the support of the child, though both mother and child be in fact supported by the child's maternal grandfather, who was under no legal obligation to furnish such support."

In this case the qualifying phrase "when the father can but does not and the mother cannot support the child" was used by the court because the language conformed with the facts in the case, and because under the statute (*Sec.* 2 of said *Chap.* 87 of the said *Code* [*Sec.* 3527]) a parent could justify his failure to support his minor child by showing any lawful excuse, and the court in its consideration of the case held that "the financial inability of the father to support his child would be a lawful excuse for non-support." After re-argument the court in an additional opinion said:

"After consideration of the cases cited on the subject, we adhere to our interpretation of the phrase 'in destitute or necessitous circumstances,' contained in the act. As stated by counsel for the plaintiff in error, there are two lines of cases as to the liabilities of a parent towards the maintenance of his offspring; the one holding that a child may be in destitute and necessitous circumstances though its wants be amply supplied by relatives or friends; the other holding that actual destitution or necessitous circumstances must exist. The statutes construed in the cases vary much, and we still find, as stated in the opinion first filed in the cause, and for the reasons there stated, that the view there expressed is the correct as well as the salutary one."

The opinion in the *Donaghy* case is helpful, although it is not decisive of the question now under consideration. In the instant proceeding no case has been cited, neither have I found any, in which the phrase "in destitute circumstances"

has been considered in an adoption proceeding. The meaning of this phrase must be determined from a general consideration of the whole act and the intent of the Legislature as deduced therefrom must prevail.

One of the principal objects of the statute is to permit the placing of unfortunate children, who are unable to provide for themselves or whose parents by their neglect or conduct fail to provide for them, under the care of persons who are willing and able to provide such care, and in furtherance thereof to transfer to the adoptive parents, not only the custody of such children, but also all the legal duties and consequences which would attach if such children had been born of them.

Where language, as in this case, is susceptible of two constructions, that one may be legitimately adopted which will give efficacy to what the court conceives to have been the purpose which the Legislature sought to accomplish. *Keedy v. Sterling Electric App. Co.*, 13 *Del. Ch.* 66, 115 *A.* 359.

If "in destitute circumstances" is construed to mean "in actual destitute circumsances" the benefit of the statute would be denied to every abandoned child maintained at public or private expense where the parent withheld consent to a proposed adoption. On the other hand, if the phrase, as applied to abandoned children, is construed so as to include children of tender years having no independent property or income, and supported solely by the public, or by charitable organizations and individuals who are under no legal obligation to furnish such support, a great many more abandoned children through adoption proceedings would receive the benefits of home life and training under the supervision of foster parents. It is inconceivable to believe that it was the legislative intent that the meaning of the words in question was to be restricted so as to only permit the adoption of abandoned children "in actual destitute circumstances." If the meaning of the words should be

so restricted, one of the most salutary provisions of the statute would be unduly limited, if not substantially de-feated.

I am clearly of the opinion that a child who is without possessions or resources and who is dependent for support solely upon others, who are under no legal duty to furnish such support, is in destitute circumstances within the meaning of the "Adoption" Statute (*Art.* 2 of *Chap.* 88, *Revised Code of* 1935, *as amended by Chap.* 187, *Vol.* 41).

I fully realize that the adoption of a child without its parents' consent should not be decreed without the most careful consideration of the evidence. After such a consideration I am constrained to find that the child was abandoned by its mother and left in destitute circumstances. In so finding I have fully considered the fact that at the time of the birth of the child the mother was only about the age of seventeen years, and had for two years thereafter but little employment. Any weight that this might have had was entirely destroyed by reason of the fact that when the mother was gainfully employed she showed but little interest in the child. If the mother had had any great love or affection for the child it is hard to believe that she would not have visited the child oftener than on an average of less than twice a year, or to have done more for the child than to furnish a small amount of clothing, particularly so prior to last April when she was on cordial and friendly terms with the petitioners. The testimony of the mother that "I told them [the petitioners] I would let them have it [the child]," together with her neglect and conduct as disclosed by the evidence, clearly show a settled purpose and intention on her part to forego all parental duties, and this intention is in no way affected by her testimony that "last April was when I first wanted the child." By this it is not meant that an abondonment cannot be revoked. What is meant is that

mere expressions of desire or regret, unaccompanied by affirmative acts and conduct, are not sufficient to accomplish such a revocation.

Because of the mother's neglect, the child from the day of its birth continued to be dependent on others than its mother for support. The burden assumed by the petitioners was voluntary. Neither of them was related by blood to the mother or child, and therefore neither of them was under the slightest moral or any legal duty toward the child. The child has continuously been without independent means of sustenance, and but for the goodness of the petitioners or other charitably disposed persons it undoubtedly would have become an inmate of a public or private institution.

The prayer to dismiss the petition is denied.