Battle Adoption Case.

Argued November 27, 1973. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

554

*Richard S. Packel,* for appellant.

*Basil C. Clare,* for appellees.

OPINION BY MR. CHIEF JUSTICE JONES, July 1, 1974:
Elisa Battle was born out of wedlock to Laura Battle and George Dunn in 1960. Shortly thereafter, the child was placed in the care of Laura Battle's mentally deficient mother in Tarboro, North Carolina, where she became seriously ill from improper attention. Upon learning of Elisa's condition, George Dunn went to Laura Battle and asked her to take the child with her to New York where she was living so that the child would receive better treatment. Laura Battle told him that she did not want the child, would not provide for her and that if he wanted the child, he could have her whereupon they went to Tarboro, North Carolina, where Elisa was turned over to him. He brought the child back to Chester, Pennsylvania, where she was nursed back to good health by his wife, his mother, Vernal Dunn, and one Mrs. Outen, a friend. For the next six years, while Elisa resided with Vernal Dunn, all of her food, clothing and medical expenses were provided by George Dunn. In addition, she spent weekends with the Dunns on a regular basis. During this period Laura Battle made occasional, short visits with her daughter. Then, in 1967, without the knowledge or con-

sent of George Dunn, Laura Battle removed the child from Chester, Pennsylvania, and placed her with relatives in Tarboro, North Carolina. George Dunn went to North Carolina several times seeking to see Elisa and to obtain her return. In 1968, Laura Battle took Elisa from North Carolina to live with her in New York City.[1] Thereafter, Elisa stayed with Laura Battle until February, 1970, when she sent the child by bus back to George Dunn without any explanation. Elisa remained in her father's custody for two months when, without explanation or request, Laura Battle, in the company of several men, came to Pennsylvania, met the child as she was departing a school bus and took her back to New York against her will. In September, 1970, Elisa was again placed on a bus and sent back to George Dunn.

On October 8, 1970, George Dunn and his wife, Frances, filed a petition in the Court of Common Pleas, Orphans' Court Division, of Delaware County seeking to adopt Elisa. Hearings were held before Judge SWENEY on October 19 and 29, 1970. Shortly thereafter, Laura Battle, who was objecting to the proposed adoption, brought a habeas corpus action seeking custody of the child. A hearing thereon was held on December 17, 1970, but because of the impending adoption case, the adjudication of the habeas corpus action was postponed. Following Judge SWENEY's sudden and unexpected death, the notes of testimony were transcribed and by authority of counsel, approved by Judge DIG-

---

[1] Shortly after taking Elisa to New York, Laura Battle brought an action in the Court of Common Pleas of Delaware County against George Dunn for failure to support a bastard child (September Sessions 1968, No. 319). In answer to those charges, George Dunn petioned the court for a writ of habeas corpus (No. 12432 of 1968) to obtain custody of the child. The latter action was dismissed because the court lacked jurisdiction over Laura Battle. She was successful in gaining support payments.

GINS and filed. It was then agreed by counsel for the parties that Judge DIGGINS would decide the case on the record and briefs.[2] On March 16, 1973, he granted the adoption and decreed that Elisa Battle assume and be known by the name of Elisa Dunn. Laura Battle has taken this appeal from that decree.

Because the natural mother has not consented to this adoption, the Dunns had the burden of proving to the hearing judge that she had abandoned the child in compliance with the Act of April 4, 1925, P. L. 127, §1, *as amended*, 1 P.S. §1 *et seq.*[3] Abandonment as defined by the statute is "conduct on the part of a parent which evidences a settled purpose of relinquishing parental claim to the child and of refusing or failing to perform parental duties" and such conduct must be shown to have continued "for a period of at least six months." When reviewing a finding of abandonment the two questions properly before this Court are: (1) was the evidence before the court below legally sufficient to justify a finding that the mother has abandoned this child, and (2) if the evidence as to abandonment was sufficient, was there legally sufficient evidence that this adoption would promote the best interests and welfare of the child. *Maisels Adoption Case*, 395 Pa. 329, 149 A.2d 38 (1959).

The Dunns argue that Laura Battle did abandon Elisa when she turned the child over to George Dunn back in 1960. And having shown abandonment, they contend that the best interests of the child would be served by granting the adoption. On the other side, Laura Battle argues: (1) that the evidence is insuffi-

---

[2] It was also agreed by counsel that the record in the adoption case should by reference be made a part of the habeas corpus case.

[3] These acts have been repealed and replaced by the Adoption Act of July 24, 1970, P. L. 620, No. 208, Art. I, §101, 1 P.S. §101 *et seq.* (Supp. 1973). However, the instant action was initiated prior to the effective date of the new act.

cient to prove an abandonment, (2) that even if it were sufficient, her physical custody of Elisa for approximately two years before the institution of the adoption action and after the abandonment compels the conclusion that the abandonment had been terminated, and (3) that the child's best interests would not be served by this adoption.

We have no problem finding abandonment on the part of Laura Battle in 1960 when she turned Elisa over to George Dunn. For a period of more than six years Laura Battle completely neglected her maternal duties and had only occasional visits with her daughter. This Court has said that "abandonment requires only an intent to escape parental responsibility and conduct in effectuation of such intent and does not require that the parent cease to feel any concern for the child's interest." *Hookey Adoption Case*, 419 Pa. 583, 589, 215 A.2d 860, 863 (1966). While her visits may express her continued concern for Elisa,[4] the evidence clearly indicates that Laura Battle made a formal declaration of her intention to terminate her parental responsibilities and then conducted herself in accordance with that intent.

We also dismiss Laura Battle's claim that her custody of Elisa for nearly two years immediately prior to the institution of this action terminated her earlier abandonment. She contends that abandonment cannot exist during a period of the maintenance of the physical custody of the child. While we do not intimate that an abandonment is irrevocable, we will not allow a parent who has once shunned her parental duties to terminate that abandonment by merely obtaining custody of the child in the manner here employed. This Court has stated that "[a]bandonment is not an ambulatory

---

[4] The court below suggested that the purpose of these visits may have been to meddle in the affairs of George and Frances rather than to visit Elisa.

thing," *Davies Adoption*, 353 Pa. 579, 587, 46 A.2d 252, 256 (1946), and that "once the abandonment is shown to have existed it becomes a judicial question whether it really has been terminated or can be, consistently with the welfare of the child." *Weinbach's Appeal*, 316 Pa. 333, 339, 175 A. 500, 502 (1934). Although an abandoning parent's later custody of the child is a factor to consider, once an abandonment has been established it is the child's welfare that is material. After thorough examination of the record, we are convinced that Laura Battle's abandonment has not been terminated and we believe that Elisa's welfare would best be served by affirming the adoption decree.

Despite Laura Battle's custody of Elisa for nearly two years prior to the institution of this action, the evidence strongly supports this result. We do not believe that Laura Battle has demonstrated a *genuine* desire to care and provide for Elisa. During her period of custody and despite her ability to provide better housing, she was content to live with Elisa in a one-room studio apartment in New York City which she herself admitted was unfit for raising a child. There she often shared her bed with a boy friend in Elisa's presence. In addition, it was Elisa's godmother, Delphine Jones, rather than Laura, who demonstrated real concern for the child's educational development. Furthermore, she had told Delphine that she wished to rid herself of the burden of caring for the child. Her actions of returning Elisa by bus to George Dunn on two occasions bear out those wishes. Finally, there is evidence that the real motivation for withholding her consent to this adoption is her bitterness toward Frances Dunn.

In contrast, George Dunn has shown real concern and interest in his daughter throughout her life and he and his wife have demonstrated to the satisfaction of the court below that they are worthy adopting parents.

They can offer Elisa a comfortable rural home and since they have a daughter of their own a real family relationship can be pursued.

We are not uprooting a child from stable surroundings in this case. Despite Laura Battle's two-year custody of the child, there is no evidence that Elisa had developed strong ties and a sense of security with her natural mother. She has testified that she prefers to live with her father.

Accordingly, we affirm the decree of the court below. Costs on appellant.