**Petition of C.E.H., for Adoption of C.A.P., Beatrice Perry, Appellant.**

**No. 12310.**

District of Columbia Court of Appeals.

Argued April 12, 1978.

Decided Sept. 18, 1978.

Francis D. Carter, Washington, D. C., with whom Wesley S. Williams, Washington, D. C., was on the brief, for appellant.

Harry L. Ryan, Jr., Arlington, Va., for appellee.

Anne T. Liipfert, Washington, D. C., for appellee C.A.P.

Before KERN, GALLAGHER and YEAGLEY, Associate Judges.

YEAGLEY, Associate Judge:

In this appeal from the Family Division of Superior Court, appellant, the natural mother of C.A.P., a female minor, challenges an order granting the petition of appellee C.E.H. to adopt C.A.P. Appellant claims that the trial court erred in finding that she had abandoned C.A.P.

C.A.P. was born on May 10, 1970. Three days later appellant placed her with the Department of Human Resources (DHR), ostensibly for adoption. At the time, appellant was upset about having given birth to

a child out of wedlock. She felt that she could not reveal the child's birth to her family or friends. Appellant was also experiencing financial problems. She was employed part-time at a department store where she earned $45 a week and resided at a rooming house which did not allow children.

On May 15, 1970, DHR placed the child in St. Ann's Infant and Maternity Home. Within three months of the child's birth the mother had secured full-time employment with the Department of Defense at a salary of $7,400. In the summer of 1971, she took a $10,415 position with the General Services Administration, where she is presently employed. During this period, she remained at the rooming house and C.A.P. remained at St. Ann's Infant Home. Appellant visited C.A.P. at St. Ann's, but never felt ready to take her.

In August 1971, DHR placed C.A.P. in a foster home. A neglect petition was filed in Superior Court in October 1971. Appellant conceded this petition and the court entered a dispositional order placing legal custody of C.A.P. with DHR. The child remained in foster care, and in November 1973, DHR's petition to extend the dispositional order for an additional year was granted. Appellant continued to visit the infant from time to time at the foster home.

In March 1974, a status hearing on C.A.P. was held before the Superior Court. A DHR caseworker testified that appellant had neglected C.A.P. since birth, and stated that DHR was in need of a ruling on whether the child should be returned to her mother or placed for adoption. Appellant testified that financial problems had precluded her from properly caring for the child. She further stated that she wanted the child, but that her landlord did not permit children. After noting that appellant had allowed the District of Columbia to raise the child for four years, the court, at the suggestion of appellant's counsel, gave appellant three months to find a place where she could live with the child. The court informed appellant that if she did not find a place within the three-month period, her parental rights would be terminated.

In May 1974, DHR formally petitioned the court to terminate appellant's parental rights. A hearing was held on this petition in June 1974. At the hearing, appellant testified that she still wanted custody of the child but had been unable to find a place where she could live with her. After receiving additional evidence, the trial court terminated appellant's parental rights. The court emphasized that beginning soon after the child's birth, appellant had failed to care for her despite a financial ability to do so, and had refused to cooperate with social workers assigned to the case. Appellant subsequently filed a motion to set aside the order terminating her parental rights. After a hearing at which she testified, the motion was denied. Undeterred by the rulings of the trial court, appellant appealed the termination order.

In April of 1976, this court vacated the order. *In re C.A.P.,* D.C.App., 356 A.2d 335 (1976). In so doing, we did not reach the question of whether the trial court had erred in finding that appellant had abandoned her child. Instead, we observed that the trial court had authority to terminate parental rights only in the course of an adoption proceeding, and held that the trial court exceeded its authority in terminating appellant's rights in a separate proceeding held prior to the filing of an adoption petition. We remanded the case for a hearing to determine whether custody of the child should be retained by DHR.

Meanwhile, DHR continued looking for an adoptive home for C.A.P., as it had since the termination of appellant's parental rights in 1974. This became increasingly urgent because C.A.P. had been in the agency's care since birth and was growing up as an agency child. In February 1976, at the same time DHR was considering placing C.A.P. with appellee C.E.H. for adoption, C.A.P.'s foster mother was suddenly hospitalized. In response to this emergency, the agency decided to place the child immediately with C.E.H. on trial adoptive status.

C.E.H. filed a petition to adopt C.A.P. on May 21, 1976.[1] Appellant opposed this petition, and a hearing on the merits of the petition was held on April 21, 1977.

The evidence introduced at the hearing outlined the events leading up to the filing of the adoption petition. It included testimony that until C.A.P. was removed from the foster home in February 1976, appellant had visited her on a regular basis. C.A.P. called appellant by her first name and apparently thought of her as a friend. By the time of the hearing, appellant was earning $10,500 a year. She admitted that she had never contributed financially to her child's upbringing, but stated that between 1973 and 1976, she had purchased twenty-eight $50 bonds, of which C.A.P. was named beneficiary.

The evidence further showed that C.E.H. is single and works full-time, earning $14,500. She lives with her mother, who is retired, in her mother's three bedroom house. C.A.P. has her own room in the house and participates in family activities with C.E.H.'s mother, brother and sisters. She attends a nearby elementary school. The report filed by DHR indicates that the adoptive home is secure and stable and that a close relationship has developed between C.A.P. and C.E.H. At the hearing, a psychologist testified that, in her opinion, C.A.P.'s mental condition would be adversely affected if she were forced to change homes again.

At the close of the hearing, the court found that adoption by C.E.H. would be in C.A.P.'s best interests, and that appellant had abandoned her child. Under D.C.Code 1977 Supp., § 16–304, consent to the proposed adoption of a person under 18 years of age is required from the natural parent, unless the parent "has abandoned the prospective adoptee and voluntarily failed to contribute to his support for a period of at least six months next preceding the date of the filing of the petition." D.C.Code 1973, § 16–304(d). Based on evidence adduced at

the hearing, particularly the failure of appellant to contribute to her daughter's support, the trial court found that appellant had abandoned C.A.P., and approved the adoption without appellant's consent. Appellant contends that the trial court erred in finding abandonment. We disagree.

It is well established that an adoption will be granted without parental consent on grounds of abandonment only when the parent's conduct manifests an intention to be rid of all parental obligations and to forego all parental rights. *People v. Anonymous,* 10 N.Y.2d 332, 179 N.E.2d 200 (1961); 2 C.J.S. *Adoption of Persons* § 60 (1972). Abandonment does not, however, require that a parent "leave her child on a doorstep." *In re Maxwell's Adoption,* 4 N.Y.2d 429, 176 N.Y.S.2d 281, 151 N.E.2d 848 (1958). Nor does it require that she cease to feel concern for the child. *In re Adoption of Battle,* 456 Pa. 553, 321 A.2d 622, 624 (1974). In determining whether there has been an abandonment, a court must consider the totality of circumstances, including the degree of parental love, care and attention. *In re Adoption of Christofferson,* 232 N.W.2d 832 (S.D.1975). Parental failure to support a child is a factor to be considered, *Petition of J.E.G. & M.K.G.,* D.C.App., 357 A.2d 855 (1976), but where the parent is financially unable to render support the failure to do so is not voluntary and such failure cannot constitute abandonment. *Pierce v. Bechtold,* 60 Tenn.App. 478, 448 S.W.2d 425 (1969).

We hold that the evidence amply supports the trial court's finding that appellant abandoned her child. For most of C.A.P.'s life, appellant earned a salary adequate to render support to her child, but, by her own admission, failed to do so. We consider it important, moreover, that from the time of C.A.P.'s birth, appellant never truly acted the role of a parent. She never cleaned her child or cooked a meal for her. She never assumed responsibility for C.A.P.'s religious, moral and educational training;

1. D.C.Code 1973, § 16–302 provides, in pertinent part, that: "Any person may petition the court for a decree of adoption."

these were left to the state and to foster parents. In short, appellant's abandonment was not only financial, but was physical, emotional and intellectual as well. Although C.A.P. was acquainted with her natural mother from the latter's brief visits, she neither called her "Mother," nor thought of her as such. Absent were the emotional ties and obligations which inhere in a true parent-child relationship.[2] The trial court was entitled to find as it did.

■ Having properly found abandonment, the trial court was empowered to grant the adoption petition without appellant's consent, D.C.Code 1973, § 16–304(d), provided the adoption was in C.A.P.'s best interests. We think there was ample evidence from which the trial court could conclude that C.A.P.'s interests would best be served by granting C.E.H.'s petition. Testimony established that during the trial adoptive period, C.E.H. had given C.A.P. a fine, stable home, the first one the child had ever known. A psychologist testified that removing the child from her new and positive environment would affect her adversely. At the same time, the court had received strong evidence of appellant's abandonment of her child, and was entitled to find that C.A.P.'s best interests would be disserved by granting custody of her to her natural mother. We will not disturb the trial court's conclusion.

■ Appellant contends, finally, that the trial court erred by ordering that she go forward with evidence showing that the adoption should not be granted. Under D.C.Code 1973, §§ 16–304(b) and (d), parental consent to an adoption is required unless the parent has abandoned the child. Because adoption without parental consent results in a drastic and permanent severing of one of the strongest and most basic of human relationships, the party seeking adoption must first prove abandonment by clear and convincing evidence. *Hicks v. Prince George's County,* 281 Md. 93, 375 A.2d 558, 562 (1977). *Cf. In re J.S.R.,* D.C. App., 374 A.2d 860 (1977). Hence, a parent who objects to an adoption does not have to proffer evidence showing that the adoption should not be granted until there has been a showing of abandonment. Accordingly, the trial court erred in placing the burden of going forward at this juncture on appellant. However, this was a procedural error which might have been readily cured by the trial court had appellant made a timely objection. Lacking a showing that the error affected the substantial rights of the parties, we refuse to consider it here. D.C. Code 1973, § 11–721(e). Further, the trial court did find that there had in fact been an abandonment.

Accordingly, the judgment below is

*Affirmed.*

2. Appellant contends that even if she had once abandoned C.A.P., her actions prior to the filing of the adoption petition constituted a revocation of the abandonment. In order to show a termination of an abandonment, the conduct of the parent must demonstrate a genuine desire to care and provide for the child. *In re Adoption of Battle, supra.* A mere expression of desire by a delinquent parent for return of the child, as is reflected by the record in this case, will not suffice. *Id.* Appellant's expressed desire to raise her child was not supported by any act indicative of her genuine willingness to assume parental responsibility for C.A.P. C.E.H., meanwhile, had assumed the practical and emotional duties of parenthood.