368 S.E.2d 720

**In the Matter of the ADOPTION OF Michael Charles SCHOFFSTALL.**

No. 17645.

Supreme Court of Appeals of West Virginia.

April 21, 1988.

Russell M. Clawges, Jr., Furbee, Amos, Webb & Critchfield, Morgantown, for Charles Schoffstall, Jr.

Ann E. Snyder, Kingwood, for Neil & Michelle Shedd.

NEELY, Justice:

Charles Lamar Schoffstall, Jr. and Michelle Shedd were married on 29 March 1980 and their son Michael was born on 27 October 1980. Four months later Charles was transferred from Kingwood, West Virginia to Elizabethville, Pennsylvania and the family moved there in February 1981. In April 1981, without any warning, Michelle left Charles, and returned to Kingwood to live with her grandparents. Between April 1981 and June 1982, Charles visited Michelle and Michael approximately a dozen times and Michelle took Michael to Pennsylvania twice to visit Charles.

In September 1982, Charles took another job which required that he travel and be on the road three nights a week. His job travels did not include the Kingwood area where his estranged wife and son lived. Over the next few months, attempts at reconciliation between Charles and Michelle failed. They were divorced in January 1982 on the grounds of irreconcilable differences. Michelle was given custody of Michael. Charles was ordered to pay $125 per month in child support and to provide medical insurance for Michael. Charles was also granted reasonable visitation with Michael.

From the time of the divorce to the present, Charles and members of his family have sent Christmas gifts, cards and money to Michael. Charles has repeatedly telephoned and written Michelle seeking visitation with Michael. In January 1983, Charles telephoned Michelle to arrange for Michael to visit him in Pennsylvania. Michelle refused to let Michael go to Pennsylvania without her and told Charles that he could visit Michael any time he wanted in West Virginia. Child support was discussed and Charles advised Michelle that he would withhold child support payments until he was allowed to visit with Michael in Pennsylvania. Since that time, Charles has withheld child support payments. However, Charles has provided medical insurance for Michael since the divorce and Michelle has used this insurance for Michael on one occasion.

Michelle became engaged to Neil Shedd two months after her divorce from Charles. Michelle admitted to having an affair with Neil Shedd while she was engaged to Charles. She married Neil Shedd in January 1984. When she moved in with Mr. Shedd, the couple decided to get an unlisted telephone number. After finally locating Michelle and Michael's whereabouts through Michelle's grandparents, Charles again attempted to make contact with Michael. However, Michelle still refused to allow Michael to visit Charles in Pennsylvania. In December 1984, Michelle refused to accept Christmas presents from the Schoffstalls and told Charles' brother, Randy Schoffstall, that it would be best if the Schoffstall family had no further contact with Michael.

In December 1985, Neil Shedd and Michelle called Charles and told him that Neil Shedd was Michael's biological father in an attempt to gain his consent for an adoption. Charles refused and expressed his desire to visit with Michael.

As a result of Charles' refusal, Neil and Michelle Shedd filed a petition in the Circuit Court of Preston County seeking the adoption of Michael by Neil Shedd and asserting the abandonment of parental rights by Charles Schoffstall. A hearing was held on 27 August 1985. The circuit court held that the petitioners established by clear, cogent and convincing evidence that Charles Schoffstall had abandoned his son and that the best interests of the child would be promoted by granting the adoption. On appeal to this Court, Charles Schoffstall asserts that the circuit court erred in finding that he abandoned his son Michael and in terminating Charles' parental rights by granting the adoption of Michael Schoffstall by Neil Shedd. We agree and reverse.

I

*W. Va. Code*, 48-4-3(a) [1984] provides, in pertinent part:

"The mother and legal father or determined father shall consent to the adoption by a writing acknowledged as in the case of deeds, unless the court orders,

after hearing, that the parental rights of such person are terminated, abandoned or permanently relinquished, or that the person is under disability solely because of age."

Because Charles Schoffstall has not consented to the adoption of his son by Neil Shedd, the only way the circuit court could grant the adoption is by proof that Charles abandoned or permanently relinquished his parental rights to Michael.

 "The standard of proof required to support a court order limiting or terminating parental rights to custody of minor children is clear, cogent and convincing proof." Syl. Pt. 6, *In re Willis,* 157 W.Va. 225, 207 S.E.2d 129 (1973); *State v. Carl B.,* 171 W.Va. 774, 301 S.E.2d 864 (1983). In the case before us we do not believe that Neil and Michelle Shedd established by clear and convincing evidence that Charles Schoffstall abandoned his parental rights to Michael.

Among the numerous definitions of abandonment of a child within the purview of the adoption laws, the most frequently approved is that "abandonment imports any conduct on the part of the parent which evinces a settled purpose to forego all parental duties and relinquish all parental claims to the child." [1]

*W.Va.Code,* 48–4–3(a) [1984] does not define conduct that would extinguish parental rights and constitute abandonment. However, we drew the broad outline of what constitutes abandonment in *Petition for Change of Name of Harris,* 160 W.Va. 422, 236 S.E.2d 426 (1977). In *Harris,* we held that proof of abandonment of a child by the father for name change purposes shall not be less than that required to divest the father's parental rights under the adoption statute and further stated:

"Where a father abandons his children, provides no support and maintenance, does not visit the children, and does not in any other reasonable way, given his position in life and opportunities for the exercise of his parental rights, exercise the authority or undertake the responsibilities of a parent ... we would not be concerned with the father's protectable interest because he would have waived such interest by abandonment."

160 W.Va. at 428, 236 S.E.2d at 430.

 The trial court gave great weight to the father's admitting that he had not paid child support since July 1982, in willful disregard of a child support order by the court. However, there is strong evidence indicating that this was done to gain leverage for visitation privileges in Pennsylvania with Michael. Charles told Michelle that until she allowed Michael to visit in Pennsylvania, he would not pay child support. This may be contempt of court but it is not abandonment.

 A majority of jurisdictions find that a failure to pay child support is merely a factor to be considered in determining abandonment and not *per se* evidence of abandonment.[2] We agree and hold that in the absence of specific statutory provisions, the failure to pay child support alone does not constitute abandonment.[3]

Michelle Shedd has made visitation with Michael difficult for Charles Schoffstall.

---

1. *See, Shumway v. Farley,* 68 Ariz. 159, 203 P.2d 507 (1949); *In Re Kline's Adoption,* 24 Del.Ch. 427, 8 A.2d 505 (1939); *Wheeler v. Little,* 113 Ga.App. 106, 147 S.E.2d 352 (1966); *Petition of Miller,* 15 Ill.App.2d 333, 146 N.E.2d 226 (1957); *Emmons v. Dinelli,* 235 Ind. 249, 133 N.E.2d 56 (1956); *Logan v. Coup,* 238 Md. 253, 208 A.2d 694 (1965); *Wallace v. Lougee,* 107 N.H. 251, 221 A.2d 780 (1966); *In Re Jacques,* 48 N.J.Super. 523, 138 A.2d 581 (1958); *Re Favro's Adoption,* 44 Misc.2d 464, 254 N.Y.S.2d 278 (1964); *Re Adoption of Battle,* 456 Pa. 553, 321 A.2d 622 (1974). 35 A.L.R.2d 662.

2. Although a minority of jurisdictions find that a father's failure to support a child indicates abandonment of parental rights, *see, e.g., Claunch v. Entrekin,* 272 Ala. 35, 128 So.2d 100,

(1961); *Petition of Martensen,* 129 Colo. 125, 267 P.2d 658 (1954); *Re Adoption of Johnson,* 399 Pa. 624, 161 A.2d 358 (1960), a majority of jurisdictions find that failure to support a child, alone, is not sufficient to constitute abandonment. *Logan v. Coup,* 238 Md. 253, 208 A.2d 694 (1965); *Smith v. Smith,* 119 Ga.App. 619, 168 S.E.2d 609 (1969); *Pierce v. Bechtold,* 60 Tenn.App. 478, 448 S.W.2d 425 (1969); *Re Adoption of Anonymous,* 31 Misc.2d 324, 220 N.Y.S.2d 910 (1961); *In Re Y.R.V. and M.A.V.,* 179 Ga.App. 18, 345 S.E.2d 121 (1986).

3. This decision does not in any way condone Charles Schoffstall's failure to pay child support. We merely hold that under *W.Va.Code,* 48–4–3(a) [1984], failure to pay child support alone does not constitute abandonment.

She left Charles and moved three hundred miles from the marital home. After the divorce, Michelle made no trips to Pennsylvania nor did she allow Michael to visit Charles and his family in Pennsylvania. She refused to respond to Charles' or the paternal grandparents' requests by mail to visit with Michael. When she married Neil Shedd, she took an unlisted phone number and moved without notice to Charles. Michelle's grandparents admitted that Charles called their residence many times before and after the divorce to talk to Michelle and that they often didn't tell Michelle that he called. In December 1984, Michelle refused to accept Charles' Christmas gifts for Michael and a letter requesting visitation. Charles' further efforts to establish visitation in October 1985 and January 1986 were likewise rebuffed, indicating Michelle's intentions to break all ties between Charles and Michael.

We hold that Charles Schoffstall has not relinquished his parental rights in his son Michael and that the Preston County Circuit Court erred in finding abandonment. We reverse and remand this case to the circuit court to arrange reasonable visitation privileges for Charles and a plan for Michelle to collect the child support payments due to Michael by Charles Schoffstall.

Reversed and Remanded with directions.

McHUGH, J. dissents and would affirm the lower court.