**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

**FILED**

**March 1, 2017**

**released at 3:00 p.m.**
RORY L. PERRY, II CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

IN RE: ADOPTION OF L.A.

No. 16-0149 (Logan County No. 15-A-30-W)

**MEMORANDUM DECISION**

The petitioner herein and respondent below, S.A.[1] ("Father"), by counsel Paul R. Sheridan and Ira Clinton Adams, III, appeals from an order entered January 14, 2016, by the Circuit Court of Logan County. By that order, the circuit court granted the stepparent adoption petition of the respondents herein and petitioners below, C.S. ("Mother") and H.B. ("Stepfather"), by counsel M. Timothy Koontz. On appeal to this Court, Father contends that the circuit court erred by granting the stepparent adoption petition and terminating his parental and custodial rights to his infant child.

Upon our review of the parties' arguments, the appendix record, and the pertinent authorities, we find that the circuit court erred by granting the subject stepparent adoption because the record evidence demonstrates that Father did not abandon his child. Accordingly, we reverse the circuit court's January 14, 2016, order and remand this case for further proceedings consistent with this opinion. Because this case does not present a new or significant issue of law, and for the reasons set forth herein, we find this case satisfies the "limited circumstances" requirement of Rule 21(d) of the West Virginia Rules of Appellate Procedure and is proper for disposition as a memorandum decision.

The facts giving rise to the instant proceeding began in September 2012 with the birth of the parties' child. Father and Mother lived together with their child, and Father supported the family with his employment earnings. In December 2013, the parties separated, and Mother and child moved out of Father's home. Thereafter, Mother initiated proceedings in the Family Court of Logan County by which she sought and was awarded child support, with

---

[1]Insofar as the case *sub judice* involves sensitive facts, we will refer to the parties by their initials and refrain from including unnecessary identifying information about the minor child involved in these proceedings. *See, e.g.*, *In re: S.H.*, 237 W. Va. 626, ___ n.1, 789 S.E.2d 163, 165 n.1 (2016). *See also* W. Va. R. App. P. 40(e) (restricting use of personal identifiers in cases involving children).

1

Father receiving supervised visitation with the parties' child. In July 2014, Father's employment was terminated.[2] Although Father had been paying his court-ordered child support obligation through mandatory wage withholding, after he was dismissed from his employment, Father had no income from which to pay his support obligation. Mother then filed a petition for contempt based upon Father's nonpayment of child support. Father responded by filing a petition to modify his support obligation. Neither party filed a petition or motion regarding Father's visitation with the child.

The family court held a hearing on the contempt and modification petitions in January 2015. During the hearing, the court observed that an earlier hearing had been held in June 2014, but no transcript or order from that hearing existed from which to ascertain the nature of the proceedings. Counsel opined that the June hearing had reviewed the status of the case as well as Father's visitation privileges with the child, but no details were provided. Visitation was not further discussed during the January 2015 hearing nor was Father deemed to be unfit to visit with his child; the remainder of the hearing addressed the pending child support issues. By order entered April 7, 2015, the family court resolved the child support issues by ordering Father to claim the child on his income tax return, requiring him to pay his full tax refund to Mother to satisfy child support arrearages and future support obligations, permitting Mother to place a lien upon Father's income tax return, and modifying Father's prospective support obligation. The court further ordered that

> [Father's] visitation with the parties [sic] minor child is terminated at his parent's house and/or any other place. At such time when [Father] can successfully pass a drug screening test, he can petition the court for visitation. [Father's] visitation is terminated until further order of this court.

Father did not appeal this ruling.

Mother then, on April 10, 2015, filed an amended petition for contempt for Father's alleged failure to comply with the family court's April 7, 2015, order. Father appeared pro se during the ensuing May 26, 2015, contempt hearing. Ultimately, the family court refused to hold Father in contempt because (1) Father's visit with the child on March 22, 2015, occurred before the entry of the court's order terminating his visitation privileges and (2) the delay in Father's payment of his income tax refund to Mother was caused, in part, by the tax lien Mother had levied on said refund. Despite making no finding as to Father's parental fitness, the family court ruled during the hearing that "I'll cut off visitation until [Father] can

---

[2]It appears that Father had a work-related drug test in June 2014. The result of this drug test was positive and led to Father's subsequent dismissal from his employment.

show some employment and some initiative." This ruling is memorialized in the resultant June 18, 2015, final order, which directed that Father's "visitation with the parties [sic] minor child is hereby terminated at this time[,] and . . . [Father] will need to petition the Court for any visitation to be reinstated until further order of this Honorable Court." Father, who was not represented by counsel, did not appeal this ruling.

Father's parents, the child's paternal grandparents, subsequently filed a petition for grandparent visitation. In August 2015, Father filed a pro se petition for modification whereby he sought reinstatement of his visitation privileges. In support of his request for visitation, Father stated "I'm requestion [sic] that my visiontation [sic] to be reinstated as I can now pass a drug test. I [sic] no longer using drug and leaving [sic] with my partents [sic] and looking for a job." The family court considered both of these petitions during a hearing held on September 23, 2015. As to the grandparents' petition, the family court held such request in abeyance insofar as Father still possessed his parental rights to the child. With respect to the Father's petition, the family court awarded him supervised visitation, every other Monday, for thirty minutes at a local McDonald's restaurant. During the hearing, the family court explained her ruling as follows:

> I wouldn't grant this visitation if I thought the child were in any danger. And that's the only reason I'm granting it is under very, very controlled circumstances. But I think, just so I have this on the record, in case [Mother's attorney] decides to appeal, I think it's better to have some kind of very controlled parenting time, than to have no parenting time at all if there's a way to control the situation. Because I'm hoping that [Father] is telling us the truth and that he has his life together.[3] And if he does, then he's eventually going to get parenting time. Restricted at first, supervised at first, but eventually he'll get parenting time back. And I don't want it to be a shock to your [child] to go this period of time and have no contact with him at all and then all of a sudden have this person reappear in [the child's] life. So, rather than have, go from zero to something, let's go from zero to something very, very, very controlled.

---

[3]As part of these proceedings, Father submitted to a drug test, which came back negative for the presence of drugs in his system. Mother also requested, and was granted, permission from the court to conduct hair follicle testing on Father, at her expense, to detect drug usage over a longer period of time. It does not appear from the record, though, that Mother has ever requested Father to submit to a hair follicle test.

(Footnote added). The award of supervised visitation is memorialized in the family court's September 25, 2015, order.[4] This order was not appealed.[5]

On the same day as this family court hearing was held, Mother and Stepfather tendered,[6] to the Circuit Court of Logan County, a petition for stepparent adoption alleging that Father had abandoned the parties' child by not providing support or visiting with the child for the immediately preceding six months. While the stepparent adoption petition was pending, Father resumed visits with his child, visiting every two weeks in accordance with the family court's order.

The circuit court held the final stepparent adoption hearing on December 14, 2015; Mother and Stepfather were represented by counsel, while Father appeared pro se. During the hearing, Father testified as to the restoration of his visitation privileges, but was unable to provide documentation thereof. Mother and Stepfather's attorney provided the circuit court with a family court order purportedly reflecting such ruling, but it is not clear whether the order actually presented to the circuit court was the family court's order holding in abeyance the grandparents' visitation petition or whether it was the family court's order reinstating Father's visitation. Ultimately, the circuit court found that Father had failed to support, contact, or visit with the parties' child during the six months immediately preceding the filing of the stepparent adoption petition, which conduct the court found constituted a statutory presumption of abandonment pursuant to W. Va. Code § 48-22-306 (2001) (Repl.

---

[4]The family court's order also noted that Father had a history of substance abuse that had been addressed at prior family court hearings and had resulted in the termination of his parenting time with the parties' child, though no specific dates are given for said hearings or rulings. While the parties have made various representations regarding Father's alleged drug use, there are no judicial findings of fact in the record finding Father to be an unfit parent as a result thereof. Moreover, it does not appear that any complaints have ever been made to Child Protective Services seeking to terminate Father's parental rights based upon parental unfitness attributable to his alleged drug use.

[5]The family court's decision to hold in abeyance the grandparents' petition for grandparent visitation is reflected in a separate order, which also does not appear to have been appealed.

[6]Although Mother and Stepfather presented their petition for stepparent adoption to the circuit court on September 23, 2015, the circuit court did not order the petition to be filed until October 1, 2015. The reason for this delay is not clear from the record.

Vol. 2015).  The circuit court finalized the stepparent adoption by order entered January 14, 2016.[7]

Thereafter, Father, represented by counsel, filed a Rule 60(b) motion for relief from the final adoption order on February 11, 2016.[8]  Through this motion, Father sought to clarify the perceived facts upon which the circuit court had based its ruling and provide proof that he had requested the restoration of visitation during the statutory six-month presumption period and that he had been regularly visiting with his child since the restoration of his visitation privileges.  By order entered February 17, 2016, and corrective order entered February 18, 2016,[9] the circuit court denied Father's request for relief.  Father now appeals to this Court.

On appeal to this Court, Father challenges the circuit court's findings of fact and conclusions of law in its final order granting the subject stepparent adoption.  We previously have held that "[t]his Court reviews the circuit court's final order and ultimate disposition under an abuse of discretion standard.  We review challenges to findings of fact under a clearly erroneous standard; conclusions of law are reviewed *de novo*."  Syl. pt. 4, *Burgess v. Porterfield*, 196 W. Va. 178, 469 S.E.2d 114 (1996).  We conduct a plenary review of the circuit court's interpretation of the governing statutory law and its application to the facts of this case.  *See* Syl. pt. 1, *Chrystal R.M. v. Charlie A.L.*, 194 W. Va. 138, 459 S.E.2d 415 (1995) ("Where the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review.").

The sole issue presented for this Court's consideration and resolution is whether the circuit court correctly ruled that Father had shirked his responsibilities to his child so as to permit a finding of abandonment under W. Va. Code § 48-22-306 (2001) (Repl. Vol. 2015)

---

[7]Later in January 2016, the two visitation petitions pending in family court, *i.e.*, Father's visitation petition and his parents' grandparent visitation petition, which had been scheduled for status hearings on December 16, 2015, but which hearings were continued at Mother's request, were dismissed given the final order in the stepparent adoption case.

[8]Insofar as Father filed his petition for appeal herein one day after his Rule 60(b) motion for relief from the final adoption order and before the circuit court had ruled on said motion, only the circuit court's final stepparent adoption order is before the Court in the instant proceeding.

[9]The circuit court's initial order on February 17, 2016, incorrectly stated that Father had not appeared for the final stepparent adoption hearing.  The court's February 18, 2016, order corrected this statement to reflect Father's appearance.

sufficient to support the subject stepparent adoption. Pursuant to W. Va. Code § 48-22-306(a),

> [a]bandonment of a child over the age of six months shall be presumed when the birth parent:
>
>> (1) Fails to financially support the child within the means of the birth parent; and
>>
>> (2) Fails to visit or otherwise communicate with the child when he or she knows where the child resides, is physically and financially able to do so and is not prevented from doing so by the person or authorized agency having the care or custody of the child: Provided, That such failure to act continues uninterrupted for a period of six months immediately preceding the filing of the adoption petition.

*See also* W. Va. Code § 48-22-102 (2001) (Repl. Vol. 2015) (defining "abandonment" as "any conduct by the birth mother, legal father, determined father, outsider father, unknown father or putative father that demonstrates a settled purpose to forego all duties and relinquish all parental claims to the child"); *Matter of Adoption of Schoffstall*, 179 W. Va. 350, 352, 368 S.E.2d 720, 722 (1988) (noting that "abandonment" is "any conduct on the part of the parent which evinces a settled purpose to forego all parental duties and relinquish all parental claims to the child" (citations omitted)).

Under W. Va. Code § 48-22-306(d), this statutory presumption may be overcome by showing there existed "compelling circumstances" to prevent the child's parent from fulfilling his/her parental responsibilities:

> Notwithstanding any provision in this section to the contrary, any birth parent shall have the opportunity to demonstrate to the court the existence of compelling circumstances preventing said parent from supporting, visiting or otherwise communicating with the child: Provided, That in no event may incarceration provide such a compelling circumstance if the crime resulting in the incarceration involved a rape in which the child was conceived.

Moreover,

> [f]or a natural parent to avoid the presumption that he or she has abandoned a child who is over the age of 6 months, W. Va. Code § 48-4-

6

3c(a)(1)[10] [1997] requires the parent to financially support the child, within the means of the parent. Furthermore, W. Va. Code § 48-4-3c(a)(2)[11] [1997] requires the parent to visit or otherwise communicate with the child when the parent: (1) knows where the child resides; (2) is physically and financially able to do so; and (3) is not prevented by the person or authorized agency having the care or custody of the child. If there is evidence in a subsequent adoption proceeding that the natural parent has both failed to financially support the child and failed to visit or otherwise communicate with the child in the 6 months preceding the filing of the adoption petition, a circuit court shall presume the child has been abandoned.

Syl. pt. 2, *In re Jeffries*, 204 W. Va. 360, 512 S.E.2d 873 (1998) (footnotes added).

Finally, the burden of proof required to terminate a parent's parental rights, such as would be required in the stepparent adoption matter *sub judice*, is clear and convincing evidence. *See* Syl. pt. 6, *In re Willis*, 157 W. Va. 225, 207 S.E.2d 129 (1973) ("The standard of proof required to support a court order limiting or terminating parental rights to the custody of minor children is clear, cogent and convincing proof.").

In granting the stepparent adoption, the circuit court found that Father had both failed to support and failed to communicate with his child during the six months immediately preceding the filing of the stepparent adoption petition resulting in a statutory presumption of abandonment pursuant to W. Va. Code § 48-22-306(a). Although Father, who appeared at the adoption hearing pro se, attempted to present evidence of compelling circumstances to rebut the statutory presumption of abandonment, the testimony presented at the hearing was confusing, particularly insofar as it is not clear whether the circuit court was presented with the family court's order restoring Father's visitation privileges or the family court's order, entered the same day as the preceding order, holding in abeyance the grandparents' petition for visitation. Upon our review of the record in this case, we find that the circuit court erred in concluding that Father had abandoned his child.

Pursuant to W. Va. Code § 48-22-306(a)(1), the first factor necessary for a finding of presumptive abandonment is the parent's failure to provide financial support for his/her child "*within the means* of the birth parent." (Emphasis added). The evidence in this case is uncontradicted that, at the relevant time, Father was not employed and had no income from

---

[10]In 2001, the Legislature recodified the adoption statutes, but the pertinent language is substantially unchanged.

[11]*See* note 10, *supra*.

7

which to fulfill his support obligation. In other words, Father had no "*means*" by which to pay child support. *Id.* Around the time that the six-month presumption period commenced, Father had given his entire income tax refund check to Mother in payment of past due child support, with any excess to be applied to future child support payments. Moreover, while Father was unemployed and without job prospects for the first part of this six-month period, during the second half of this time, Father was actively seeking employment and applying for jobs throughout Logan County.[12] We conclude that Father demonstrated both that he provided support for his child "within [his] means"[13] and that there existed compelling circumstances,[14] *i.e.*, his unemployment, to explain his nonpayment of support.[15]

The second factor required to support a statutory presumption of abandonment is the parent's failure to "visit or otherwise communicate with the child when . . . [he/she] is physically and financially able to do so and is not prevented from doing so by the person or authorized agency having the care or custody of the child." W. Va. Code § 48-22-306(a)(2). The term "abandonment" also contemplates "a settled purpose to forego all duties and relinquish all parental claims to the child." W. Va. Code § 48-22-102. Under the facts presented by the appendix record, we find neither statutorily presumed abandonment nor "a settled purpose to . . . relinquish all parental claims" to exist in this case. *Id.* It is apparent from the record evidence herein that, during the six-month statutory presumption period, Father could not visit with his child because the family court had *prevented* him from doing so after Mother had requested visitation, even supervised visits, to cease due to Father's alleged drug use. However, none of the family court orders terminating Father's visitation

---

[12]Furthermore, insofar as the six-month period referenced in W. Va. Code § 48-22-306(a) appears to refer to the parent's communication and visitation with the child rather than the provision of support, we note that Father has provided support in addition to the aforementioned income tax refund. When the child was first born, Father supported both Mother and the parties' child until Mother and child left his residence. Thereafter, Father provided child support through mandatory wage withholding until his employment was terminated. Additionally, Father's counsel noted, during oral argument, that Father is now working and repaying his child support arrearages.

[13]W. Va. Code § 48-22-306(a)(1).

[14]W. Va. Code § 48-22-306(d).

[15]Furthermore, even if Father had inexcusably failed to support his child, "failure to pay child support alone does not constitute abandonment of the natural parents' rights in an adoption proceeding." Syl. pt. 2, in part, *Matter of Adoption of Schoffstall*, 179 W. Va. 350, 368 S.E.2d 720 (1988).

rights contained in the appendix record disclose any findings of fact by the presiding judge upon which to base the court's conclusion that visitation between Father and his child should end, either because Father was unfit, because such visits were harmful to the parties' child, or for any other reason.[16] Ultimately, the family court indicated that it would consider restoring Father's visitation privileges, upon Father's petition for reinstatement, once he "show[ed] some employment and some initiative." Not only was this an improper condition to place upon Father's right to visit with his child,[17] but such admonishment did not deter Father's commitment to seek and exercise visitation.

Following the family court hearings and orders of spring 2015 terminating Father's visitation privileges, Father stopped using drugs and started looking for employment. In August 2015, during the subject six-month presumption period, Father, pro se, filed a petition to reinstate his visitation privileges. And, once his visitation with his child had been restored in September 2015, Father regularly exercised his visitation privileges, every other week, until the time of the final adoption hearing. Such proactive conduct by Father does not suggest that he intended to forego all contact with his child. Rather, upon these facts, we are left with the inevitable conclusion that Father did not abandon his child under any definition

_____

[16]Neither has there been a referral to Child Protective Services seeking to terminate Father's parental rights based upon concerns that Father is not capable of parenting his child or that he is a danger to his child as a result of his alleged drug use.

[17]While we cannot afford Father relief from these orders from which he did not appeal, we would be remiss if we did not note that family law jurisprudence, both in West Virginia and in our sister jurisdictions, recognizes that a court cannot withhold visitation from a parent based solely upon the parent's nonpayment of child support. *See, e.g.*, Syl. pt. 2, *Ledsome v. Ledsome*, 171 W. Va. 602, 301 S.E.2d 475 (1983) ("The right of a parent, not in custody of his or her child, to visit that child may not ordinarily be made dependent upon the payment of child support by that parent. However, when a court finds that the parent's refusal to make child support payments is contumacious, or willful or intentional, that parent's visitation rights may be reduced or denied, if the welfare of the child so requires."). *See also Wilson v. Wilson*, 73 Idaho 326, 328, 252 P.2d 197, 198 (1953) ("It is only under extraordinary circumstances that a parent should be denied the right of visitations . . . . Default in the payment of support money is not in itself sufficient reason to deprive the father of the right to see and visit his child."); *Block v. Block*, 15 Wis. 2d 291, 297, 112 N.W.2d 923, 927 (1961) ("The rights of visitation should not be denied a parent to punish him because of his failure to pay support money for the child. The paramount reason for visitation is the benefit to be derived by the child from associating with its parents and its welfare should not be jeopardized by an order conditioned upon payment of support money . . . even though such order might prove effective as a collection device." (citations omitted)).

9

of the term. Moreover, to the extent that Father did not visit with his child during the six-month statutory presumption period, the record is clear that Father was prevented from exercising his visitation privileges by orders of the family court and, further, that such orders constitute "compelling circumstances"[18] under the particular facts of this case.

In the final analysis, adoption is a creature of statute. As such, the adoption statutes must be strictly complied with in determining whether to grant a petition seeking to adopt a minor child in a given case. *See, e.g.*, *In re the Adoption of Jon L.*, 218 W. Va. 489, 494, 625 S.E.2d 251, 256 (2005) ("[W]e recognize that adoptions in West Virginia, and elsewhere, are governed by statute."). *See also Franklin v. White,* 263 Ala. 223, 225, 82 So. 2d 247, 249 (1955) ("[T]he right of adoption is purely statutory." (internal quotations and citations omitted)); *In re Adoption of Watson,* 45 Haw. 69, 73, 361 P.2d 1054, 1056 (1961) ("The proceedings being wholly statutory, adoption may be effected only by compliance with the prescribed requirements of the law."). Under the facts and circumstances presented in this case, we cannot conclude that Mother and Stepfather have established the statutory presumption of abandonment set forth in W. Va. Code § 48-22-306(a) necessary to compel the subject stepparent adoption over Father's objections. Accordingly, we reverse the circuit court's order granting such adoption and remand this case for further proceedings consistent with this opinion.[19]

---

[18]W. Va. Code § 48-22-306(d).

[19]To the extent that Father also seeks relief from this Court to reinstate his visitation privileges with the parties' child, such issue is not properly before the Court insofar as the circuit court in the subject stepparent adoption proceeding ruled only on the adoption matter, while the issue of visitation was under consideration in the concurrent family court proceeding. Accordingly, any request for reinstatement of Father's visitation privileges should be brought before the family court. Should the visitation proceedings be revisited, the family court should follow Rule 47 of the West Virginia Rules of Practice and Procedure for Family Court to determine whether the appointment of a guardian ad litem is needed to protect the safety or best interest of the parties' child insofar as the deprivation and restriction of Father's visitation privileges have been attributed to Father's alleged drug use. *See* W. Va. R. Prac. & Proc. Fam. Ct. App. B, at 2 ("Courts shall not routinely assign guardians ad litem for children . . . *unless the court has reasonable cause to suspect the parenting issues involve a child's safety or the best interest of the child warrants further investigation by the court.*" (emphasis added)). Furthermore, should the court deem it appropriate to reinstate Father's visitation privileges with his child, such process should be accomplished gradually. *See* Syl. pt. 3, in part, *James M. v. Maynard*, 185 W. Va. 648, 408 S.E.2d 400 (1991) ("It is a traumatic experience for children to undergo sudden and dramatic changes . . . . Lower courts in cases such as these should provide, whenever possible, for a gradual transition

For the foregoing reasons, the January 14, 2016, order of the Circuit Court of Logan County is hereby reversed, and this case is remanded for further proceedings.

Reversed and Remanded.

**ISSUED:** March 1, 2017

**CONCURRED IN BY:**

Chief Justice Allen H. Loughry II
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Elizabeth D. Walker

---

period, especially where young children are involved. Further, such gradual transition periods should be developed in a manner intended to foster the emotional adjustment of the children to this change and to maintain as much stability as possible in their lives."). The family court, upon the evidence presented to it, may determine whether such visitation should be supervised, but, in any event, the reintroduction of visitation should be accompanied by a transition period and accomplished in a gradual manner given the substantial length of time during which Father and child have had no contact with each other.

11